In the Matter of the Estate of John Allison, Jr.,
John Allison, Sr., Contestant, Appellant, v.
Elizabeth Allison, Proponent.

**Evidence: will contest:** *Due execution.* The testimony of a proponent, to the effect that she was present when the will was executed and that the subscribing witnesses reside without the state, is admissible to show, *prima facie*, the execution of the will and to cast the burden of proof upon the contestant, although the depositions of the subscribing witnesses are on file in the case upon other issues and though proponent took one of such depositions and all were taken by agreement.

**Competency.** A will in favor of deceased's wife, and offered by her for probate, was contested by his father on the ground of incompetency and undue influence It appeared that the will was executed in a town in Arkansas two days before deceased's death; that the wife was there at the time; that contestant resided in Iowa; and that deceased's only brother resided near contestant. A witness for the latter testified that she was at said town during deceased's sickness, and that she then asked the wife why she did not send for her husband's brothers, and the wife said she did not want them. The wife's cousin, who lived near contestant, was permitted to state the contents of a lost letter she received from the wife during deceased's sickness, and which she read to contestant and his daughter when received, to the effect that he was very poorly, and requesting her to take the letter to contestant and daughter, for the reason that she had no time to write to them, and to repeat a conversation with them to the effect that they desired the witness to go to Arkansas, as contestant was too old, and the daughter could not go. *Held*, that the cousin's evidence was competent and material.

**Jury question.** The finding of the jury as to competency to make a will should stand, where it cannot be properly said that the evidence is conclusive either way, especially after the trial court has declined to interfere.

**Instruction construed.** In a proceeding for the probate of a will an instruction to the jury that if the testator did not adopt the signature to the instrument as his own after his name was signed for him, it will be "proper" to find that it is not his will, is not objectionable as leaving the nature of the finding upon such facts discretionary with the jury, where, in view of preceding instructions, the word could only have been understood in the sense that

it was the right or duty of the jury, under such facts, to find there was no will.

**Appeal:** HARMLESS ERROR: *Evidence.* An appellant cannot complain that a question asked a witness whose deposition was taken at the instance of appellee was erroneously overruled, as not a proper cross-examination, when the subject was fully inquired into by a deposition of the same witness, taken by appellant.

REQUESTED INSTRUCTIONS. An appellant cannot complain of the failure of the court to give a requested instruction when the facts assumed in it sufficiently depart from the record to make it partial and unfair, and the court, in a minute and correct charge, dealt with the same subject in a way that was fair to both parties.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

FRIDAY, DECEMBER 17, 1897.

PROCEEDING for the probate of a will. Objections on the grounds of incompetency and undue influence. Verdict for proponent, and the contestant appealed.— *Affirmed.*

*J. H. Scott* and *Seerley & Clark* for contestant, appellant.

*Power, Huston & Power* for proponent, appellee.

GRANGER, J.—I.   John Allison, Jr., residing in Des Moines county, Iowa, died at Hot Springs, Ark., November 10, 1894, without issue, leaving as his widow the proponent, Elizabeth Allison. November 8, 1894, at Hot Springs, he executed the will in question, with Drs. Walker and McClenden as subscribing witnesses. The contestant was his father. By the terms of the will, he gave his entire estate to his widow, and constituted her the executrix of his will. The will was presented to the district court for probate on the thirteenth day of November, 1894, and objections were filed thereto on the grounds of incompetency and undue influence. The

issues were tried to a jury, that returned a finding for proponent.

II. To prove the due execution of the will, the proponent offered herself as a witness, and against objections was permitted to testify that she was present when the will was executed, and that she knew Drs. Walker and McClenden, and that they resided at Hot Springs, Ark. She was then shown the will, and asked if she saw them sign their names thereto, and she answered that she did. Proponent then offered in evidence the will, signed by John Allison, Jr., with the attestation signed by J. J. Walker and J. W. McClenden, which, against objections, was admitted. Proponent then put in evidence the notice and service thereof, and rested. Contestant then moved the court to instruct the jury to find against the admission of the will to probate, on the ground that there was no proof of the due execution of the will, or that John Allison, Jr., was, at the time of the purported execution, in a condition to make a valid will, which motion the court overruled. Thereupon the contestant presented evidence upon the issues of incompetency and undue influence, followed by rebutting evidence on the part of the proponent. Among the evidence introduced were depositions of Drs. McClenden and Walker, the contestant having taken the depositions of both, and proponent that of Dr. McClenden, and in both cases by a stipulation of the parties. The court gave to the jury the following instruction: "(3) It appears from the undisputed evidence in the case that there is attached to the document in controversy, offered for probate as the will of the said John Allison, Jr., a certificate in proper form, and signed by two competent witnesses, which recites that the paper in question was duly executed as the will of the said deceased, and this attestation, under the circumstances of this case, creates a presumption that the said document was duly executed

as certified, and the burden of proof is consequently upon the contestant, and it is incumbent upon him to establish the invalidity of the said alleged will by a preponderance of evidence." In another instruction it told the jury that the presumption arising from the will, as put in evidence, might be overcome or satisfactorily explained by other evidence showing that the will was not executed as it purported to be, and that if the jury so found from the greater weight of evidence, or if it found from the greater weight of evidence that John Allison, Jr., at the time of the making of the will, was not of sound mind, or executed the will under undue influence, it would be proper to find that it was not his will. Contestant presents the following propositions for consideration: "(1) Can secondary or inferior evidence be introduced to prove the due execution of a will, when, by consent of both parties, the depositions of the subscribing witnesses are on file in the case? (2) Can inferior testimony be introduced to prove the due execution of a will, when the proponent has set in motion the process of the court, and taken the deposition of one of the subscribing witnesses to the will on other questions, and also when depositions of both are on file? And, (3) by this inferior testimony can the burden be cast upon the contestant when by agreement the process of the court had issued, and the deposition of the subscribing witnesses has been taken and filed, in the case?" It should be remembered that both subscribing witnesses resided in Arkansas, and were beyond the jurisdiction of the courts of this state. The great weight, if not the entire current, of authority is with the proposition that, where subscribing witnesses are dead, or beyond the jurisdiction of the court, proof of their handwriting is a compliance with the law as to due execution. Beach, Wills, 66; *Ela v. Edwards*, 16 Gray, 91. In Lawson, Rights, Remedies & Prac., section 3198, it is said: "Where the witnesses are all dead, or cannot be had

because beyond the jurisdiction of the court, or being present they deny their signatures, or do not remember, proof of the handwriting of the witnesses and of the attestation may be given." This text takes for its support *Tynan v. Paschal*, 27 Tex. 286; *Dean v. Dean*, 27 Vt. 746; *Jackson v. Vickory*, 1 Wend. 406; *Transue v. Brown*, 31 Pa. St. 92; and other cases. In 29 Am. & Eng. Enc. Law, 203, it is said: "While subscribing witnesses are most proper to establish the execution of a will, and the failure to call one within reach is a subject worthy of consideration, yet in the case of their death, non-residence, failure to remember the circumstances of the execution, or unfavorable testimony, the will may be established by other evidence." This text, also, cites numerous cases for its support. These authorities, as well as reason, to our minds, make clear the proposition stated.

It remains to be seen how the fact of the depositions being taken by consent of parties affects the situation. We do not see why that fact should change the rule. At the inception of the proceeding for the probate of the will the law fixed the right of the proponent as to the character of the evidence required to show *prima facie* the execution of the will. Other evidence was made necessary by the objections to the probate, and the depositions were taken because of the objections. It was the fact that the subscribing witnesses lived out of the state that made the testimony of Mrs. Allison proper. The right to so use her testimony did not depend on her inability to obtain the testimony of the subscribing witnesses, but of the simple fact of their non-residence. It thus appears that she was not bound, as a condition precedent, to use diligence or exhaust legal means to obtain such testimony. With the fact of non-residence fixed, it was her right to use other evidence. So it may be said that, even though the testimony of such non-resident witnesses is obtainable, other evidence may be

used. The fact that proponent desired and took the deposition of one of such witnesses upon other questions, or consented to the taking of depositions by the contestant, in no way affects the right otherwise given by law. To our minds, the evidence of Mrs. Allison was proper to show *prima facie* the execution of the will, and the effect was to cast upon the contestant the burden of overcoming such *prima facie* effect, or of showing incompetency or undue influence to defeat the will. It follows that in the admission of the evidence and the giving of instructions there was no error.

III. A Mrs. Smith, cousin of the proponent, who resides near contestant in Des Moines county, was a witness for proponent, and was permitted, against objections, to state the contents of a letter received by her from proponent, written at Hot Springs, during her husband's sickness, and a little while before he died. When the letter was received by Mrs. Smith she took it to the home of contestant, and read it to him and his daughter, and, as the letter was lost, she was permitted to state the contents, which was, in substance, that her husband was very poorly, confined to his bed most of the time, and asked her (Mrs. Smith) to take the letter to her father and sister, and read it to them, for the reason that she had no time to write to them. She was also permited to state in evidence a conversation with contestant and his daughter to the effect that they desired her (Mrs. Smith) to go to Hot Springs, as contestant was too old, and the daughter could not go. It is urged that such evidence was immaterial and incompetent, because it did not contradict any evidence offered by contestant, and that what John Allison, Sr., might have said in no manner tended to show the circumstances under which the will was executed. A Mrs. Gobile was a witness for contestant, and testified that

she was at Hot Springs during the sickness of Mr. Allison, and that she had a conversation with proponent, in which she asked her why she did not send for Mr. Allison's brothers, as her husband was dying, and proponent answered that she did not want them there, but that she would send for her cousin. The object of this testimony must have been to show that for some reason proponent was evading her husband's relatives, and especially his brother, and he had but one. There is evidence that John Allison, Jr., was not on speaking terms with his brother James. As to the proof of the contents of the letter by parol, its loss was sufficiently accounted for to permit it, if the letter itself would have been admissible as bearing on the question of undue influence by her after an attempt to show that she was avoiding the presence of her husband's brother. The brother James lived at Mediapolis, near the father, and, if proponent was thus sending information to the father, the fact tends to rebut any claim that she was withholding information from relatives to further a scheme to secure the property. It is to be borne in mind that the letter was read to, and the conversation was with, contestant, a party to this proceeding. Mrs. Smith was also permitted to testify that contestant told her of the unfriendly relation between the brothers. It is thought that the testimony was immaterial and incompetent, but we think not. With the evidence on the part of the contestant as to what proponent said about wanting the brother there, it was proper to put all the facts before the jury, and let it determine the motive that prompted the remark, if it was made.

IV. In a deposition of Dr. McClenden, taken by proponent, he testified that he performed a surgical operation one day after he arrived at Hot Springs, and that only one operation was performed. No other questions were asked in his direct examination. The cross-examination disclosed that the operation was for

stricture of the urethra; that the patient was out about seven or ten days before his death; and that a rubber catheter was used during the last days of his sickness to draw urine. It was then sought, on cross-examination to show that Mr. Allison was affected with uremic poisoning, and, if so, the effect of it on him. The right to do so was refused, on the ground, as we understand, that it was not a proper cross-examination. We do not find it necessary to determine the question, for the reason that the subject was fully inquired into in deposition of the same witness taken by contestant.

V. It is claimed that instruction No. 2, asked by contestant, should have been given. The instruction deals with the physical and mental condition of Mr. Allison at the time of making the will, and conceding the correctness of the legal propositions, upon the facts assumed, it may be said that there is just enough of a departure from the record condition as to facts, to make it partial and unfair. The court quite minutely and correctly dealth with the same subject, and in a way that was fair to both parties.

VI. John Allison, Jr., did not attach his own signature to the will, but it was placed there by another, and the court, after specifying the statutory rule in such cases, said: "And if in this case you find, by a preponderance of evidence, that the said John Allison, Jr., did not direct the signing of his name to the paper in controversy, as and for his will, and you further find that he did not expressly approve or adopt the signature of the said paper as his own after his name had been signed to the same for him, it will then be *proper* for you to find that he did not execute the document in question, and that it is not his will." The criticism is upon the use of the word "proper," and it is thought the court should have directed the jury that it *should* find that the instrument

was not his will under such a state of facts. It is said that the use of the word "proper" left it to the jury to find that he either did or did not execute the instrument, and that it was or was not his will, as the jury might elect. The abstract use of the word might justify some such conclusion, but words, in instructions, are not always to be considered with reference to their technical accuracy, but relatively, and that meaning accorded to them that such a consideration shows to have been intended. The instruction under consideration in terms referred to the preceding one, in which the subject of a due execution of the will, as to signing the same by the testator, was considered, and the court expressly said to the jury that if it found in the negative upon the following proposition: "Was the name of the said John Allison, Jr., signed to the document in controversy, as and for his will, in his presence, by a person acting for him and under his express direction, or was the signature of the said paper adopted by him as his signature after it was signed?" it would be its duty to find in favor of the contention of the contestant, and that the paper in controversy was not the will of the said John Allison, Jr. The thought is prominent throughout the instructions that if the instrument was not executed in a legal manner it was not the will of Allison. In view of the situation, the use of the word *"proper"* could only have been understood by the jury in the sense *of right or its duty*, and with that understanding there was no error.

VII. It is also claimed that there was really no execution of any will by John Allison, Jr., and that the finding of the jury is not supported by the evidence. Both claims depend on the state of the evidence for support. No partial review of the evidence would illustrate the situation. One view of it, as is nearly always the case, leaves no doubt of the incompetency; but, when all is considered, it is not to

be said that it is not an open question about which there is room for a difference of opinion. The conclusion depends much on the credit to be given to particular witnesses, not so much with reference to their veracity, as with reference to their conclusions from observations and particular facts coming to their knowledge. The line between competency and incompetency, or that shows a testamentary capacity, is always traced with uncertainty, and the findings in most cases are justified only as the best solution of a doubtful problem. It is true of this case. However the fact might be found, there would be the conviction that it was doubtful. It is not to be properly said that the evidence is conclusive either way. With such conditions the finding of the jury should stand, and especially after the district court has declined to interfere. The judgment is AFFIRMED.