BROWN *v.* McBRIDE *et al.*

1. When it is sought to prove a will in solemn form, where one of the subscribing witnesses is absent, it is competent to prove the signature of such witness, after proving that the witness is inaccessible. Such proof for the purpose mentioned is equivalent to proof that the witness is dead or beyond the jurisdiction of the court.

1. (*a*) In such case a witness is competent to testify as to his belief who will swear that he knows or would recognize the handwriting of the subscribing witness. The source of his own knowledge is a question for investigation, and goes entirely to the credit and weight of the evidence. The testimony objected to, fairly interpreted, should be construed as meaning that the witness knew the signature of the subscribing witness to the will and would recognize it.

2. In an application to probate a will in solemn form, where the sanity of the testator is the question at issue, it is not erroneous to allow non-expert witnesses to testify as to their opinion of the condition of the testator's mind, after stating the facts upon which they base their opinion.

3. Where a witness upon his direct examination testified that the testator was of sound mind, and, for the purpose of impeachment, a written contract was introduced, which had been executed by the witness, wherein it was recited that the testator was non compos mentis, it was competent, after the introduction of such contract, for the witness, in explanation, to testify that he did not know the meaning of the term non compos mentis as used in the contract.

4. The excerpts from the charges of the court complained of stated correct principles of law and were applicable to the case.

5. Upon an application to prove a will in solemn form, it is not erroneous to exclude from evidence, upon the ground of irrelevancy, letters of administration and the bond of the administrator from the court of ordinary, originating in a proceeding for administration upon the estate of the deceased before the will was offered for probate in solemn form. Nor was it erroneous to exclude from evidence, upon the ground of irrelevancy, a written order signed by the attorneys of one other than the propounder of the will, addressed to the caveator, requesting him to pay certain amounts of money to certain creditors of the estate of the deceased.

6. A will is properly executed if signed by the testator, and, after signing it, he acknowledges to three subscribing witnesses that he signed it, and thereupon the three witnesses, in the presence of the testator and in the presence of each other, sign the will as witnesses thereto. It

is not erroneous, therefore, upon an application to prove the will in solemn form, to refuse a request to give to the jury a charge which contains the following: "If it appears from the evidence in the case that Clegg signed the will not in the presence of the attesting witnesses, or of one of the attesting witnesses, then it would not have been executed according to law and could not be probated in solemn form, but your verdict would be against the will."

7. In the absence of a timely written request, it is not erroneous for the court to omit to charge the law upon the subject of impeachment of witnesses. *Boynton* v. *State*, 115 *Ga.* 587 (3), and cit., 41 S. E. 995.

8. Upon the trial certain rulings were made to which exceptions pendente lite were allowed, and upon which error is assigned in the bill of exceptions. These questions were sufficiently dealt with when the case was before this court on a former occasion (*Hooks* v. *Brown*, 125 *Ga.* 122, 53 S. E. 583), and it is not now necessary to deal with them.

9. Upon the motion to continue, the evidence was of such character as to show no abuse of discretion in ordering the trial to proceed.

10. Upon a careful examination, the evidence appears to be of such character as to support the verdict in favor of the validity of the will.

Argued May 25,—Decided August 12, 1907.

Probate of will. Before Judge Littlejohn. Lee superior court. July 2, 1906.

*Allen Fort & Son* and *E. A. Hawkins,* for plaintiff in error.

*Ware G. Martin, James Taylor,* and *Shipp & Sheppard,* contra.

ATKINSON, J. 1. The issue arose out of an application to probate a will in solemn form. Clegg was the testator. G. A. McDonald, J. M. Rhodes, and A. A. Kerney were the subscribing witnesses. There was no testimony by any witness that the testator actually signed the will in the presence of any of the witnesses, but there was testimony to the effect that all three of the witnesses signed the will in the presence of the testator and in the presence of each other. Upon this point, Kerney testified by interrogatories: "I was a witness to the will; signed the original will as a witness at the request of Judge D. H. Pope. George McDonald and John Rhodes were the other witnesses. I do not know whether the other two witnesses were present when Clegg signed the will, but my best judgment and recollection is that I was not present when Clegg signed the will. I and the other two witnesses signed the will in the presence of the testator, as witnesses, and in the presence of each other." Neither McDonald nor Rhodes testified. It was proved on the trial that McDonald was dead. It was shown that the signature to the will was the genuine signature of the testator. There was also evidence to the

effect that, some fifteen years before the trial, Rhodes had left the country and had not been heard of since. Frequent inquiries had been made to ascertain his whereabouts, and all efforts to locate him had proved unavailing. He had killed a man before leaving. A witness, who saw him at the time he was leaving, testified: "Rhodes told me on the train that he had had some trouble and had to leave. He told me he was going 'up the country,' was what he said. He did not say how far, and I haven't either met or seen him since or heard from him." There was other testimony tending to show an inability to discover Rhodes' whereabouts. It was not affirmatively shown that he was either dead or beyond the limits of the State. Having in this manner shown the absence of the two witnesses, the propounder of the will then offered evidence for the purpose of proving the signatures of such absent witnesses entered upon the original will. For this purpose several witnesses were permitted to testify, in substance: "I would say to the best of my knowledge that the signature of J. M. Rhodes to the paper presented to me is the signature of J. M. Rhodes. I have seen it a good many times. I have had a good many deals with him." The testimony was admitted over the objections, (*a*) that the evidence was illegal and insufficient to prove the signature of J. M. Rhodes; (*b*) that there was no proof that Rhodes was dead or beyond the jurisdiction of the court. For the same purpose another witness testified: "That is Mr. McDonald's, and that is Mr. Virgil A. Clegg's signature. That is the signature of McDonald." This evidence was objected to upon the ground that it was illegal and insufficient to prove the signature of McDonald, the witness not having testified to ever having seen him write or that he knew his signature or his handwriting. Under the provisions of the Civil Code, § 3282, a will is proved in solemn form when "the will is proven by all the witnesses in existence and within the jurisdiction of the court, or by proof of their signatures and that of the testator, the witnesses being dead, and ordered to record." There was proof in this case that the witness McDonald was dead, and sufficient proof accounting for the absence of the witness Rhodes to show that he was inaccessible and that his testimony could not be had. Under these conditions, we think a sufficient showing was made to justify the court in hearing evidence upon the handwriting of

both witnesses. The reason is equally as cogent for proving the will by proof of handwriting of the subscribing witness when the witness is inaccessible to the court and can not be found, in order that his testimony may be procured, although he may at the time be found within the jurisdiction of the court, as if he were dead, or, if living, as if he were living without the jurisdiction of the court. See, in this connection, *Robinson* v. *State,* 128 *Ga.* 254, 57 S. E. 315. . The court was authorized to hear evidence for the purpose of determining whether the witness had been shown to be accessible or not. Evidence was submitted upon that proposition, which was of such character as fully sustained the conclusion of the court that the witness was inaccessible. The witness being inaccessible, it was the duty of the court to meet the necessity which arose on account of the absence of the witness, by admitting testimony in proof of the signature of the witness to the will. When it is attempted to prove the will by proof of the signature of the subscribing witness, any witness is competent to testify as to his belief who will swear that he knows or would recognize the handwriting, the source of his own knowledge being a question for investigation and going entirely to the credit and weight to be given his evidence. Civil Code, § 5246. While the testimony which was admitted did not in so many words say that the witness "knows or would recognize the handwriting," yet a reasonable interpretation of the testimony will admit of no other construction than that the witness meant that he knew or would recognize the handwriting. If it had been desired to press him further upon the extent or source of his information, it would have been competent upon cross-examination to do so; but in the absence of anything further, we think the testimony shows upon its face that it was admissible in evidence for the purpose offered, and, after admission, its credit was for the jury.

2. Ann Willis, a non-expert witness, testified, with respect to the sanity of the testator: "I judged his mind was good." This testimony was objected to upon the ground that it was an expression of opinion of a non-expert witness, without stating the facts upon which the opinion was based. It appears from the testimony of the witness that she resided on the testator's place and was acquainted with him. She further testified, in substance, as follows: "All his business he pretty much looked after him-

self. He gave directions. He had a business transaction the day before he died, concerning a barrel of whiskey. He appeared all right. He closed the transaction by writing a paper and giving it to the gentleman with whom he had the conversation, and told him to carry it to somebody in Leesburg. Mr. Clegg wrote the paper himself, and died the next day." J. A. McDonald, another non-expert witness, testified: "I talked with him. He was all right." This evidence was objected to upon the ground that it was an expression of opinion relating to the mental condition of the testator, without stating the facts upon which the opinion was based. An examination of McDonald's testimony shows that he was a neighbor of testator, lived about a mile from him, that he had seen him just a few days before his death, and had had a conversation with him about his farm. The testator told the witness that he was going to town, and afterwards he saw him on his way to town two or three times. He afterwards left home and went to Albany, remained a few days under treatment, and came back home. Witness was working for the testator at the time and saw him frequently. He says the testator attended to his business himself and gave directions himself; that there was no difference between the general way of transacting business then and prior to that time. The reason for the objection urged against the admissibility of the evidence is not supported by the recitals of the record. Both witnesses testified to such an acquaintance with the testator and his demeanor in the transaction of business in the conduct of his farm as to authorize an expression of their opinions before the jury as to his mental condition. The opinions, of course, were to be taken in the light of the facts upon which they were based; and in view of the testimony of the witnesses as a whole, we can see no error in the admission of the testimony in evidence over the objection urged thereto. See, in this connection, *Proctor* v. *Pointer,* 127 *Ga.* 134, 56 S. E. 111; *Slaughter* v. *Heath,* 127 *Ga.* 748 (6), 57 S. E. 69.

3. McBride was called by the propounder of the will to show that the testator was sane and mentally competent to execute a will. The caveators introduced, for the purpose of impeachment, a certain written contract signed by McBride, in which it was declared that the testator was non compos mentis. It was competent by way of explanation for the witness, on redirect examina-

tion, to testify that he did not know the meaning of the term, "non compos mentis," as used in the paper which he signed. The question here is one of impeachment, and not whether a party is bound by the recitals of the contract which he signed.

4. One of the grounds of the motion for new trial is as follows: "Because the court erred in giving in charge to the jury the following charge, to wit: 'And it is also required, under the law, that the propounders shall produce all the witnesses to that will for the purpose of showing by them the proper execution of that will, unless those witnesses are dead, or out of the jurisdiction of the court, if they can not show them to be dead, or without the jurisdiction of the court, or beyond the limits of the State. If they fail to show that the witnesses are dead, or can not show that they are absolutely beyond the limits of the State, or boundaries of the State, yet if they show an effort and an endeavor by diligence, a diligent effort to locate a witness, and they can not locate the witness; that they have been diligent in trying to ascertain the whereabouts of the witness; if it is shown that the witness is gone, and that they have been diligent in ascertaining the residence of said witness; if they failed to do so after making such diligent search, that would be sufficient accounting for the absence of such witness under the law.'" For the reasons indicated in the first division of this opinion, the foregoing is a correct proposition of law, and it appears to be applicable to the facts as indicated by the record.

Another ground of the motion for new trial is as follows: "Because the court, after giving in charge the following, to wit: 'In the propounding of a will the burden of the proof is upon the propounder, that is, in this case, upon those who are setting it up, the execution, those affirming it to be the will of V. A. Clegg, to show all the facts necessary to make a good will; and this includes not only the fact of execution, but that the will is the free act of a man competent under the law to make a will. Those are necessary, gentlemen, in setting up and propounding a will in common form,'—erred in qualifying the same, under the contention of caveator, that greater proof of the knowledge of the contents by the testator was necessary in this case, the capacity of the testator being involved, as follows: 'While that is true, if it is shown by satisfactory proof, the execution of the will by the testa-

7

tor, the signing of it, and that the testator could read and write and knew the contents of the will, so far as knowing the contents of the will on the part of the testator, that would be sufficient to carry the burden in that respect; if they can show the execution, that it is the signature of the testator, and that the testator was present, who was competent to read and write, nothing else appearing, that would be sufficient to carry the burden, so far as knowing the contents of the will is concerned.'" This ruling is also correct. See, in this connection, *Slaughter* v. *Heath,* 127 *Ga.* 748 (9), 57 S. E. 69.

5. The 18th ground of the motion for new trial complains that the court erred in excluding upon the ground of irrelevancy, upon objection being urged, certain letters of administration granted upon the estate of the testator to his daughter, together with the petition for administration signed by the attorneys of the applicant, and also the administrator's bond filed by the administrator. It was urged that the evidence was material as a circumstance tending to show that the court of ordinary had denied the probate of the will of V. A. Clegg by granting letters of administration; that it was the judgment of a court having jurisdiction of the subject-matter, and was notice to the world that said Clegg died intestate. The 19th ground of the motion for new trial complained of a like ruling of the court in excluding from evidence a certain paper which·was signed by the attorney of the daughter of the testator, addressed to S. B. Brown, the caveator, requesting Brown to pay certain amounts of money to certain parties designated as creditors of the estate of V. A. Clegg, the testator. There was no error in excluding either of these papers from evidence. Neither was in the slightest degree material upon any question raised upon the application to prove the will in solemn form.

6. The court refused, upon application of the caveator, to charge the following: "The law requires that the testator must sign the will in the presence of the attesting witnesses, or the testator· must acknowledge the signing of the will in the presence of the subscribing witnesses. If it appears from the evidence in the case that Clegg signed the will not in the presence of the attesting witnesses or of one of the attesting witnesses, then it would not have been executed according to law and could not be

probated in solemn form, but your finding should be against the will. The law requires that there should be three attesting witnesses, and that the testator should have signed in their presence. In investigation of the question of whether or not a testator is of sound mind, if it should appear that at any particular time the insanity of the testator has been shown, then the presumption of law is that this condition of insanity continues until this presumption is rebutted by satisfactory proof." This request contains at least one inaccurate expression which justified the court in refusing to give it in charge. The court was requested to charge: "If it appears from the evidence in the case that Clegg signed the will not in the presence of the attesting witnesses or of one of the attesting witnesses, then it would not have been executed according to law and could not be probated in solemn form, but your finding should be against the will." This is not a correct statement of the law. The witnesses need not have seen the testator sign the will. It would have been sufficient if all of the witnesses in the presence of each other and in the presence of the testator signed the will, after he had signed it, upon his acknowledgment of having signed it, although they did not see him affix his signature. Such an execution would have complied with the terms of the statute. Civil Code, §3272. See, in this connection, *Beall* v. *Mann*, 5 *Ga.* 455-9. The request was not so qualified as would have authorized its submission to the jury.

*Judgment affirmed. All the Justices concur.*