## WELLS v. THOMPSON.

1. To probate a will in solemn form the burden is upon the proponent to prove the due execution of the instrument and the testamentary capacity of the testator at the time of its execution.

2. The statutory rule that a will must be proved in solemn form by all the attesting witnesses is of necessity dispensed with where the production of all is impossible because some may be beyond the jurisdiction of the court, or can not be found, or are dead, or insane, or otherwise incompetent as witnesses at the time of trial. In such cases the due execution of the will may be proved by the subscribing witnesses who can be produced, and proof of due attestation by the requisite number of witnesses may be made by proving the handwriting of the others.

3. While the interrogatories or depositions of attesting witnesses who reside beyond the jurisdiction of the court may be taken, it is not necessary to take them if the will can be proved by other legal and satisfactory evidence.

4. Where there is an attestation clause to an instrument offered for probate as a will, reciting all the facts essential to its due execution as a will, and it is shown that the alleged testator and those whose names appear thereon as witnesses actually affixed their signatures to the paper, a presumption arises that it was executed in the manner prescribed by law for the execution of wills.

5. That the alleged testator knew the contents of the instrument offered for probate, and desired to execute it as a will, may be considered on the trial of an issue of devisavit vel non.

6. In a proceeding to probate a will in solemn form, the only issue is devisavit vel non; and therefore the matter of construing the terms of the instrument offered for probate is not up for determination.

7. The evidence submitted in behalf of the proponent, as to the due execution of the instrument offered for probate, and as to the testamentary capacity of the alleged testatrix at the time of its execution, was sufficient to make out a prima facie case for the probate of the paper as a will; and no evidence having been adduced for the contestant, the court erred in directing a verdict in favor of the latter.

JUNE 13, 1913.

Probate of will. Before Judge Frank Park. Dougherty superior court. January 25, 1912.

A. J. Wells, the nominated executor of the alleged will of Mrs.

Evie Brown, applied for the probate of the same in solemn form. A caveat was filed by Mrs. Pearl M. Thompson, who claimed to be the sole heir at law of Mrs. Brown. The grounds of the caveat were in substance as follows: (*a*) Mrs. Brown, at the time the alleged will purports to have been executed, was not of sound and disposing mind and memory, but was then a lunatic, and continuously so remained until the date of her death. (*b*) If Mrs. Brown signed the alleged will at all, she did not do so freely and voluntarily, "but she was moved thereto by the undue influence and persuasions of . . . said A. J. Wells." (*c*) That the pretended will was void, because A. J. Wells was not the son-in-law of Mrs. Brown at ·the time of her death, as his wife, the daughter of Mrs. Brown, had died without issue prior to the death of Mrs. Brown.

Mrs. Thompson at the time of the filing of the application had two children, both of whom were minors, and a guardian ad litem was appointed for them. The case was tried in the superior court on appeal from the court of ordinary. On the trial the instrument offered for probate was put in evidence by the proponent. The second item thereof was as follows: "I give to my daughter, Mrs. A. J. Wells, and my son-in-law, A. J. Wells," a described house and lot in the city of Ashburn, this State. In the third item two designated lots in the same city were given to Mrs. Pearl M. Thompson, for and during her life, with remainder to such children as she might leave surviving her. In a subsequent item all other property owned by Mrs. Brown was given to her two daughters, Mrs. A. J. Wells, and Mrs. Pearl M. Thompson, share and share alike. The instrument purported to be signed by Mrs. Evie Brown and four attesting witnesses, namely, M. J. Miller, C. W. Graham, J. N. Raines, and J. H. Allen. The last name purported to be signed officially as a notary public of Turner county, Georgia. The following ·attestation clause immediately followed the purported signature of Mrs. Brown, and immediately preceded the purported signatures of the four witnesses: "Signed and published by Mrs. Evie Brown as her last will and testament, in the presence of the undersigned, who subscribed our names as witnesses at the instance and request of said testator and in her presence, and in the presence of each other, this the 1st day of April, 1909." By evidence introduced by the proponent it was shown that two of the persons who appeared to be attesting witnesses to the instrument had re-

moved from this State; that one of them, Miller, was, at the time of the trial, a resident of the State of South Carolina; and that the other, Graham, was then a resident of the State of Florida. It appeared that the places where these witnesses respectively resided in such States were known. The interrogatories of neither of these two non-resident witnesses were taken. Miller's brother testified that he knew Miller's signature, and that his signature to the instrument was genuine. No one testified as to a knowledge of the handwriting of Graham. Raines and Allen, the other two persons who appeared to be subscribing witnesses to the instrument, were introduced by the proponent and testified on the trial. Raines's testimony was to the effect that Mrs. Brown signed the instrument sought to be probated, in his presence, and that he signed it as a witness in her presence. He could not remember seeing Graham, Allen, and Miller, the other three persons who purported to be attesting witnesses, sign the instrument, but he testified that they were present when it was signed. On cross-examination he testified: "Now, I don't remember having seen Mr. Allen there." Raines further testified to the effect that he had boarded in the same house with Mrs. Brown for three years or more prior to her death, and was accustomed to see her on an average of three times daily. She spoke to him three or four times about making her will, and asked him to recommend to her some one to draw it up. She informed witness several times how she desired to dispose of her property, and the disposition made of it in the instrument was the same as she had informed him she wished to make of it. He conversed with her frequently, and there was nothing in her conduct to indicate that she was not of sound mind. Her memory was bad the last six months of her life. Allen's testimony was in substance as follows: He knew Mrs. Brown several years prior to her death. He went frequently to the house where Mrs. Brown resided. She signed the paper offered for probate, and Raines, Graham, Miller, and Allen also signed it. She requested the witness to sign it. "She signed it," continued the witness, "in my presence and in the presence of others. . . She said that she understood it. I conversed with her, and she was rational as she ever was. She read the paper over. She knew what she was giving to Mrs. Thompson and what she was giving to Mrs. Wells. I said to her, 'Mrs. Brown, I want to fix it just like you want it, and if it is not like you want

it I will fix it;' and she said, 'The property is divided just like I want it, and I want to have it witnessed up to-day.'"

At the conclusion of the evidence introduced in behalf of the proponent (no evidence having been adduced for the contestant) the court directed a verdict in favor of the contestant. No exception was taken on the ground that the court was without authority to direct a verdict; but the proponent moved for a new trial on the grounds that the verdict was contrary to law and the evidence, etc., and upon the following special ground: "One of the grounds upon which the court directed said verdict was that the evidence adduced showed that Mrs. A. J. Wells, one of the beneficiaries under said will, died without issue prior to the death of the testatrix, Mrs. Evie Brown, which left only two legatees named in the will, her son-in-law, A. J. Wells, and her daughter, Mrs. Pearl Thompson, and that, because of the death of Mrs. A. J. Wells, A. J. Wells was no longer a son-in-law, and as a matter of law could no longer be a beneficiary under said will." Error was assigned upon the direction of a verdict, on the grounds that it was contrary to law, and that the words "my son-in-law, A. J. Wells," as used in the will, were merely descriptio personæ and did not designate the character in which Wells was to take under the will. A new trial was refused, and the proponent excepted.

*J. T. Hill* and *J. W. Dennard,* for plaintiff in error.
*John B. Hutcheson* and *J. B. Williamson,* contra.

FISH, C. J. (After stating the foregoing facts.) Upon the trial of the issue devisavit vel non, the burden was upon the proponent to prove the due execution of the instrument offered for probate as the will of Mrs. Brown—that is, that she signed it as her will, and that it was attested and subscribed in her presence by three or more attesting witnesses (Civil Code, § 3846), and that she, at the time of its execution, was mentally capable of making a will. To successfully carry this burden (it being a proceeding to probate a will in solemn form) it was incumbent upon the proponent to prove the paper offered to be the will of Mrs. Brown, by all the witnesses purporting to have attested it, who were, at the time of the trial, in existence and within the jurisdiction of the court; or by proof of their signatures and that of the alleged testatrix, Mrs. Brown, if the witnesses or any of them were beyond the jurisdiction of the court. Civil Code, § 3856. It was shown on the trial that two of

the persons whose names appeared as attesting witnesses, Graham and Miller, were at that time non-residents of this State, and were therefore not within the jurisdiction of the court. The proponent had no means of compelling these two non-resident witnesses to attend the trial in person, and it was not obligatory upon him to procure and to introduce in evidence upon the trial their interrogatories or depositions, notwithstanding the declaration in the Civil Code, § 3861, that "Witnesses to wills may be examined by commission, in the same cases, and under the same circumstances, as other witnesses in other cases." This provision is merely permissive, and a will may be admitted to probate upon other legal and satisfactory proof, without the interrogatories or depositions of non-resident witnesses. The fact that the depositions of a witness could have been taken does not prevent proof of his handwriting. Denny v. Pinney, 60 Vt. 524 (12 Atl. 108); Allison v. Allison, 104 Ia. 130 (73 N. W. 489); Turner v. Turner, 1 Litt. (Ky.) 101; Clark's Will, 75 Hun, 471 (27 N. Y. Supp. 681); Wilson v. Collum, 9 L. R. Ir. 150; McKeen v. Frost, 46 Me. 239. The Civil Code, § 5834, provides: "Whenever the subscribing witnesses to an instrument in writing are dead, insane, incompetent, or inaccessible, or, being produced, do not recollect the transaction, then proof of the actual signing by, or of the handwriting of, the alleged maker shall be received as primary evidence of the fact of execution." The general rules of evidence are applicable in regard to the admissibility of evidence to prove the execution, existence, and genuineness of a will. *Gillis* v. *Gillis,* 96 *Ga.* 1-18 (23 S. E. 107, 30 L. R. A. 143, 51 Am. St. R. 121); 40 Cyc. 1284. How could the trial court compel a witness in a foreign jurisdiction to appear there before commissioners, that his interrogatories or depositions might be taken? Moreover, wills are documents of too important and valuable character to require them to be sent into foreign jurisdictions, that the interrogatories or depositions of witnesses there may be taken,—the instrument may be lost or destroyed in transmission; and besides, there is no method by which foreign commissioners may be required to return the paper to the trial court of this State. The statutory rule requiring that a will must be proved in solemn form by all the attesting witnesses is of necessity dispensed with when the production of all is impossible because one or more may be beyond the jurisdiction of the court, or can not be found,

or are dead, or insane, or otherwise incompetent to testify at the time of trial. In such cases the execution of the will may be proved by the subscribing witnesses who can be produced, and proof of due attestation by the requisite number of witnesses may be made by proving the handwriting of the others. 40 Cyc. 1307, 1308; 14 Enc. Ev. 417. Numerous cases are cited in these encyclopedias in support of the principle announced. There is nothing in conflict with the propositions hereinbefore stated in the decisions in *Deupree* v. *Deupree, 45 Ga.* 417, *Brown* v. *McBride, 129 Ga.* 92 (58 S. E. 702), or *Bowen* v. *Neal, 136 Ga.* 859 (72 S. E. 340), relied on by counsel for defendant in error. The rulings in these cases, considered in connection with the facts involved, tend to support what we now hold. In the *Deupree* case, which was tried in Oglethorpe county, the proponent moved for a continuance on the grounds, that two of the attesting witnesses resided in the county of Meriwether, this State; that they had been served with subpoenas, and were absent; that the expenses of attending court had been tendered to both of such witnesses; and further, that the other subscribing witness resided in the State of Alabama. A continuance was refused, and the ruling was upheld by this court on the ground that the witnesses did not reside in the county in which the trial was had, and, under the general law of the State, were not compelled to attend court in another county. It was further held that the interrogatories of all the witnesses could be used. In *Brown* v. *McBride,* there were three witnesses to the instrument offered for probate. One of them testified by interrogatories that he and the other two witnesses signed the instrument in the presence of the testator and in the presence of each other, but that according to his recollection the testator did not sign it in the presence of this witness, and that he did not know whether the other two witnesses were present when the testator signed. It was proved on the trial that one of the other witnesses was dead, and that the other, about fifteen years before the trial, had left the county and had not been heard of since. It was shown that the signature to the instrument was the genuine signature of the testator. It was held by this court: "When it is sought to prove a will in solemn form, where one of the subscribing witnesses is absent, it is competent to prove the signature of such witness, after proving that the witness is inaccessible. Such proof for the purpose mentioned is

equivalent to proof that the witness is dead or beyond the juris-
diction of the court." It was further held that the evidence was
of such character as to support the verdict in favor of the validity
of the will. In *Bowen* v. *Neal,* one of the witnesses was dead; and
it was said that proof of his handwriting could be shown. The
case was decided adversely to the proponent on the ground that only
one of the three witnesses was introduced to prove the will, when it
did not appear that the other subscribing witness was shown to be
beyond the jurisdiction of the court, as he resided in another county
of this State, and his interrogatories could have been taken.

In the case now before us, Raines, whose name appeared as an at-
testing witness, testified that he saw Mrs. Brown sign the instru-
ment offered for probate, and that he signed it as a subscribing
witness in her presence. Allen, whose name also appeared as an
attesting witness, testified that he saw Mrs. Brown sign the instru-
ment, that he signed it as a subscribing witness, and that he saw
Graham, Miller, and Raines, whose names appeared as attesting
witnesses, sign the instrument as subscribing witnesses, and that
Mrs. Brown signed the will in his presence and in the presence of
others. It thus appears that two of the subscribing witnesses testi-
fied upon the trial, and that the evidence of one of them, Allen,
showed that the instrument was executed in accordance with all the
requirements of the law. His testimony was to the effect that the
signature of Mrs. Brown and the signatures of all four of the wit-
nesses were genuine; and Raines's testimony was to the effect that
Mrs. Brown's signature and his own were genuine. There can be
no more satisfactory evidence of the genuineness of a signature
than the testimony of one who saw it written (3 Chamberlayne's
Modern Law of Evidence, § 2177), and the evidence of Allen and
Raines as to the execution of the instrument it was sought to pro-
bate was, in the circumstances of the case, sufficient to make out a
prima facie case. Moreover, there was evidence of Mrs. Brown's
knowledge of the contents of the instrument and her desire to ex-
ecute it as her will; and besides, there was a full attestation clause
reciting compliance with all formalities of execution; and these
were matters for consideration in passing upon the question of will
or no will. 40 Cyc. 1286-1304. In *Underwood* v. *Thurman,* 111
*Ga.* 325 (36 S. E. 788), it was held: When the attestation clause
to an instrument offered for probate as a will "recites all the facts

essential to its due execution as a will, and it is shown that the alleged testator and those whose names appear thereon as witnesses actually affixed their signatures to the paper, a presumption arises that it was executed in the manner prescribed by law for the execution of wills; and this is so though there may be, on the part of one or more of the witnesses, a total failure of memory as to some or all of the circumstances attending the execution."

In a proceeding to probate a will in solemn form the issue and the only issue is devisavit vel non. The jury must find that the paper offered for probate is or is not the will of the decedent. The construction of the terms of the instrument are not, in such a proceeding, before the court for determination. *Wetter* v. *Habersham,* 60 *Ga.* 193; *Gillis* v. *Gillis,* supra. Therefore, even if the provision in the instrument offered for probate in the present case, devising to Mrs. A. J. Wells, the daughter of Mrs. Brown, and her son-in-law, A. J. Wells, certain realty, could be construed as being inoperative by reason of the fact that Mrs. Wells died prior to Mrs. Brown, and that therefore he was not the son-in-law of the testatrix at the time of her death, this could not be a valid reason why the instrument should not be probated as the will of Mrs. Brown.

There was ample evidence, in the absence of any showing to the contrary, of the testamentary capacity of Mrs. Brown at the time the instrument offered for probate was executed.

It follows from what has been said that the verdict directed by the court against the proponent was contrary to the evidence; and the judgment refusing a new trial is therefore

*Reversed. All the Justices concur.*