JACOB M. BROOKS, caveator, plaintiff in error, *vs.* NANCY C. DUFFELL, propounder, defendant in error.

At the time when the witnesses to a will, subscribed it, a door-shutter inter-vened between them and the testator, and made it impossible for him to see them, except by changing his place, He did not change his place.

*Held*, that the will was not "attested and subscribed in the presence" of the testator.

Caveat to will, in Fayette Superior Court. Tried before Judge BULL, at March Term, 1857.

A paper purporting to be the last will and testament of Thomas H. Duffell, deceased, was propounded for probate in solemn form of law, before the Ordinary of Fayette county, by the executrix, Nancy C. Duffell.

Jacob M. Brooks, who was the husband of Rachel L., a daughter of deceased, filed the following caveat against admitting said will to probate and record, to-wit:

1st. For that said deceased, at the time of making said pretended will, was not of sound and disposing mind and memory.

2d. For that said deceased did not execute said pretended will freely and voluntarily, and of his own accord.

3d. For that said deceased was fraudulently persuaded, and unduly interfered with and importuned by his wife, the principal legatee and executrix of said pretended will; dictating its provisions, and constraining deceased to make said pretended will; that he might thereby have some peace and quiet in his last sickness.

4th. For that the mind of deceased, at the time he executed said paper, was very weak and imbecile, and fraudulent practices were employed by his wife to induce him to make the unreasonable and unjust disposition of his property as contained in said will.

The Ordinary pronounced in favor of the paper propounded as the last will and testament of Thomas H. Duffell, and admitted the same to probate, and the caveator appealed.

*Brief of Evidence:*

*Varney A. Gaskill,* one of the subscribing witnesses, testified that he saw Thomas H. Duffell execute the paper propounded, and that he signed it as a witness; that in his opinion, testator was of sound and disposing mind at the time; witness was sent for to write the will; when he got to testator's house he informed him that he had come to write his will; he took his seat by the side of the bed, and with his pencil, took down the items as testator gave them out to him, and he then went to the other side, and wrote out the will; that the items and bequests were all dictated by deceased, and the disposition of his property was in accordance with what deceased had some time before informed witness he intended as to the disposition of his estate; deceased was loading his wagon, and in the act of removing to Alabama when he was taken sick.

*Thomas C. Matthews,* testified that he attested the will; that when he got to the house, Mr. Gaskill was writing the will; when it was prepared, deceased was raised up, and was unable to write his name; his wife inquired if it would do for him to make his mark, on some hesitation, Mr. Gaskill decided that it would, and held deceased's hand, and assisted him to make his mark; witness took the will when he went to sign it, and stepped to the door for the purpose of the light, as it was late in the evening, and rather dark in the house, and signed the will as a witness; deceased was in his bed in the corner of the house; the door-shutter opening back against the end or head of the bed; that the shutter of the door, from the position of deceased's head, would have prevented him from seeing witness sign the will; deceased was very sick, and did not notice any thing that was going on; never spoke from the time witness got to his house, except when he was raised to execute the will, said, "I cannot" or "I cannot write." After the will was executed and attested, and witness and Mr. Brassell, another witness, were in the act of

leaving the house, Mr. Gaskill spoke to deceased, and said, "I suppose, brother Duffell, this is your will," holding it up in his hand; to which deceased replied, *"whose? whom?"* Witness was of opinion that testator was not of sound and disposing mind when he executed the will, or that he knew anything that was doing, in relation to his property.

*John C. Brassell,* testifies, that he attested the will; he was requested to go to the house of testator, by testator's son; when he got there, Mr. Gaskill was writing the will; testator was raised up in bed to sign the will, but was unable to do so; Mr. Gaskill, on being asked by testator's wife, if it would do for him to make his mark, stated that it would, and took hold of testator's hand or the pen, and assisted him to make his mark; the witnesses signed the will in the door for the benefit of the light, as it was late in the evening and somewhat dark in the room at the time witnesses were signing; testator was lying on his bed, situated in the corner of the house; his head at the end next the corner; the door-shutter opening back against the head of the bed; it might have been possible for testator to have seen the witnesses sign the will, but not in his actual position, and without changing his position; that he is of opinion, from the condition of testator, that he was not of sound and disposing mind at the time he executed the will; that he did not seem to notice or know anything that was going on; did not hear him speak during the time the will was preparing, or when it was executed.

*Dr. P. H. Brassell,* testifies, that he was the physician in attendance upon testator during his last sickness; his disease was pneumonia; testator's mind at times, during his sickness, was wandering; visited him in the morning of the day the will was executed, and again in the evening of the same day, but after the will was made. Testator grew worse all the time of his sickness, but was worse on some days than others, and was worse on the day he signed the will; had

no conversation with him on the evening after the will was executed, except as to his case; his answers to inquiries touching his case, were rational; witness is of opinion, from his condition, that it is very doubtful whether he was of sound and disposing mind on that day; the attack of the disease was violent at the start, and continued with but slight intermission till his death.

*Reuben R. Roger,* testifies, that he was at the house several times during the day the will was executed, but was not present when the will was made; deceased was very sick on that day; did not appear to notice anything that was going on during that day; did not have any conversation with him on that day, that he recollected of; had known him before that time, during his sickness, to be out of his proper mind, from the way he talked; he often spoke disconnectedly and without any meaning or sense; did not believe, from the low condition of the testator, that he was of sound and disposing mind on the day he executed the will.

*John H. Corley,* examined by commission, testifies, that he was present on the day the will was executed; the Rev. V. A. Gaskill and Mr. Rogers, were present; Rogers, occasionally; Mr. J. Brassell was present at the execution, to the best of witness' recollection; thinks Mr. Duffell was of sound, disposing mind and memory; never heard testator give any instructions for writing his will; Mr. Gaskill was writing the will when witness went into the room; saw nothing in testator going to show that he was not of sound and disposing mind and memory; in witness' judgment he was of as sane mind as ever before, and my judgment is founded upon the attention he gave to the reading of his will and his conversation.

*John W. Bassett,* testifies, that in the month of July or August, 1853, he heard Thomas Duffell speak of making a disposition of his property, at which time he said, that he intended to leave his wife a plenty to support her and her child

Nancy Thomas; he did not say who was to have the balance of his property; he said that his daughter Rachel should have no part of his property, for the reason that she had married Jake Brooks contrary to his wishes, and he did not intend that Brooks should control any part of his property; knows nothing more.

*Behelhalen B. Corley*, testifies, that she was intimately acquainted with deceased; was present when he made his will; does not recollect the day of the month, but it was the third day after he was taken sick; was there from the first of his sickness, and waited on him until his death; he was in his right mind as well as he ever was in his life; he said that his oldest son had his part, and his daughter, Brooks' wife, married against his will, and Brooks had abused him, and he never intended to give her any of his property; thinks his capacity was sufficient to make a will, for while Mr. Gaskill was writing the will, Mr. Duffell told me he had got Mr. Gaskill to write his will, for he wanted one written, for if he lived it would do no harm, and if he died, he wanted to know who got the benefit of his labor.

*Cross-examined.*—She was present when the will was made; never heard any conversation between Mrs. Duffell and her husband, during his sickness, about his will; never heard any conversation between Mr. Gaskill and the widow, concerning the will; am a sister of the widow of the deceased; know of nothing that will benefit Brooks, for I have heard deceased say, that he never intended to give him anything.

*Dr. George H. Page*, testifies, that he was acquainted with Thomas Duffell, and attended him, in company with Dr. Brassell, in his last sickness; visited him five or six times on the 19th, 20th and 21st days of December, 1853, and on other days after that time, till after the 25th; stayed from the night of the 20th, until in the evening of the 21st; at some times he was rational and sometimes he was not; when he was rational, he was of sound and disposing mind, and when he was

not rational, he was not of sound and disposing mind; thinks his mind was in a worse condition on the 21st than at any other period of his illness, and was of less disposing mind on that day, than at any other time that I visited him. On the 19th, he talked rationally, and thinks was of disposing mind on that day; had a conversation with him, by the solicitation of his wife, in relation to making his will; this was on the 21st December, in the morning; I advised him not to make a will which he said he thought was best; left him with that understanding between him, his son and wife, and think if I had remained, he would not have made a will; and think by his not doing what he then wished to do, and being so easily changed, that he was not of sound, disposing mind on the 21st December, 1853.

*Cross-examined*:—Attend on him with Dr. Brassell, during his last sickness; visited him from the 19th till after the 25th December, 1853; visited him on the 19th, he was very sick; his disease was pneumonia; visited him five or six times, sometimes as long as twenty-four hours, and never less than six hours; had several talks with him; sometimes he was rational, and at other times he was not; went to his house the evening of the 20th Dec., and left in the evening of the 21st; he knew his family on that day; his wife and children.

The testimony being closed, the Court, amongst other things, charged the jury, that the object of the law in requiring the witnesses *to sign in the presence of the testator*, was to prevent the substitution of another instrument in the place of the genuine one, and to exclude all doubt as to the identity of the testator and witnesses, but if the proximity of the witness to the testator is so immediate as to prevent such a fraud, a door-shutter or a bed-curtain intervening the testator and the witnesses, at the actual moment of signing by the witness, would not, in his opinion, vitiate the will, if all the parties were conscious of what was being done.

The jury returned a verdict, finding the paper propounded to be the last will and testament of Thomas Duffell.

Caveator moved for a new trial on the following grounds, viz:

1st. Because the verdict of the jury was contrary to the evidence.

2d. Because the verdict was contrary to law.

3d. Because the Court erred in charging the jury, that the object of the law in requiring the witnesses to sign in the presence of the testator, was to prevent the substitution of another instrument in place of the proper will, but if the proximity of the witnesses to the testator is such as to prevent such fraud, a door-shutter or window curtain intervening the testator and witnesses, would not, in the opinion of the Court, vitiate the will.

The Court overruled the motion for a new trial, and counsel for caveator excepts.

Huie & Conner, for plaintiff in error.

Stone, for defendants in error.

*By the Court.*—Benning, J. delivering the opinion.

We do not see how to distinguish this case from *Robinson & Wood vs. King and others*, 6 *Ga.*, 539. In both cases the witnesses, when they subscribed the will, were where they could not be seen by the testator, a wall intervening in that case, a door-shutter in this.

We think, therefore, that the charge of the Court was wrong, and consequently, that there ought to be a new trial.

It is unnecessary to consider the other grounds of the motion for a new trial, they depend upon the evidence.

Judgment reversed.