## Hamlin *et al. vs.* Fletcher, executor.

1. Under the constitution of 1868 and the act of 1869, the distinction theretofore existing between grand and petit jurors was destroyed. The names of jurors, whether grand or petit, were drawn from the same box, and the presiding judge might send litigants before the twenty-four petit or the twenty-three grand jurors in his discretion, but there was no provision that if either should fail to furnish a complete legal panel, he might supplement from the other. Under the constitution of 1877 the distinction is re-established, and whilst the grand jurors may be called upon in certain cases to do traverse jury service, yet where all but fifteen of the grand jury have been stricken for cause, there is no law to authorize the completing of the panel to twenty-four from the list of traverse jurors.

2. The judge has not the power to indicate who shall be placed upon a panel as jurors to complete it. Where the grand jury does not furnish a full panel of competent persons, he has no power to direct the clerk to supplement from the first names upon the list of traverse jurors. These additions were talesmen selected by the judge, and taken from a different class of persons from those whom he had determined should try the case.

2. The attestation of a will must be made at a time and place where the testator can see that he is not imposed upon, and can have cogni

zance of the persons and the act. There must be no obstruction to prevent his seeing it; his position must be such as to enable him, without change of situation—not position—to see the witnesses sub-scribing the will, by looking in that direction and bringing within the scope of his vision the *factum* of the attestation.

Constitutional law. Jurors. Practice in the Superior Court. Wills. Attestation. Before Judge HILLYER. Monroe Superior Court. February Term, 1879.

Reported in the opinion.

J. S. PINCKARD; BACON & RUTHERFORD; STONE & TURNER; BERNER & TURNER, for plaintiffs in error.

J. D. STEWART; A. D. HAMMOND; T. B. CABANISS; HENRY C. PEEPLES, for defendant.

CRAWFORD, Justice.

The defendant in error offered for probate in the court of ordinary of Monroe county a paper writing, which he he undertook to propound as the last will and testament of Roderick Rutland, deceased, a caveat was filed thereto upon several grounds, and the issue thus formed was carrried to the appeal by consent.

When the case was called for trial in the superior court, it was announced from the bench that the same would be tried by a special jury selected from the list of grand jurors. After some objections, which we consider immaterial, that body was brought into court, and, upon the request of counsel for caveators, each member was put upon his *voir dire*, and all but fifteen disqualified themselves.

The judge instructed the clerk to proceed under the *voir dire*, calling the list of traverse jurors, and in that way twenty-four were provided and the trial proceeded. A verdict was rendered for the propounder. Caveators submitted a motion for a new trial upon several grounds, one of which was the manner in which the jury was selected. The court refused the motion, and caveators excepted.

It will be conceded that if the jury which tried this case was an illegal jury, that their finding was also illegal, and that a new trial must be granted.

There are two objections to the formation of this jury; the first is, that under no law, and under no practice known to us in this state can a special jury be composed of one-half the members of a grand jury, and the other half of the members of the petit juries. And the second is, that under no law and no practice can a judge, when ascertaining that any number of the jurors called to sit in a case are disqualified, can select, indicate or direct, either through the clerk or the sheriff, particular persons who shall be called to complete the panel.

1. Prior to the constitution of 1868 jurors were divided into two classes, and their names drawn from separate boxes. The grand and the petit jurors of the same term could in no case serve together; petit jurors never served upon appeal causes, nor grand jurors of the term in criminal causes. Their oaths were different; the petit juror was to try a case according to the evidence, the grand juror according to equity and the opinion he entertained of the evidence.

In 1868, however, the distinction was broken down by the constitution; and, under a law of 1869, the names of competent persons were placed in the same box, and drawn therefrom indiscriminately, to serve either as grand or petit jurors, the latter of whom were to try all civil cases, unless the judge, in the exercise of his discretion, should call for a special jury to be chosen from the grand jury. So that it will be seen that the judge might send the parties litigant before the twenty-four petit or the twentry-three grand jurors. But no provisision was made by which if the one or the other should fail to furnish a complete legal panel, he could call in the other and supplement it therefrom, but he was remanded to the regular mode provided by law for filling up his juries by talesmen.

But it is said that the constitution of 1877 authorizes

and allows this mode to be adopted, and in effect, if not in words, repeals the act of 1869. In art. 6, sec. 18, par. 2, the constitution declares that "The general assembly shall provide by law for the selection of the most experienced, intelligent and upright men to serve as grand jurors, and intelligent and upright men to serve as traverse jurors. Nevertheless, the grand jurors shall be competent to serve as traverse jurors." It will be observed that the distinction between them is re-established, although the grand juror may be called to do traverse jury service. In what way may this be done? evidently in that way which was, or might be, provided by law. It was known to the framers of the constitution, that persons in the grand jury box were liable to serve as traverse jurors in criminal cases, and in such civil ones as the judge in his discretion should require of them the performance of that duty, and the concluding words of the clause quoted were evidently put there to cover the two instances mentioned, as well as to prevent their competency being questioned.

We are wholly unable to see how the judge had upon this trial any new power vested in him, either by the constitution or the law made to carry it into effect. When he sounded this case upon his docket, what power had he as to the juries? Simply to direct that the jury be chosen in one or the other of the modes provided by law, and when he had done this, he had exhausted his judicial discretion—was held to his election, without power to return, after he had secured fifteen qualified jurors, and adopt the other mode which he had rejected. Having ordered the jury to be chosen from the grand jury, when he found that he had only fifteen, he should have selected them just as he would have done if, upon the organization of the body, only that number of the original panel had appeared. The only argument against our view of this question was, that the law of 1869 was repealed by the constitution of 1877. If this be true, then the answer to it is found in the fact, that if repealed the judge was wholly unauthorized by any law to

have the issue tried by a special jury taken from the grand jury.

2. The second objection which we have named is as conclusively error upon the part of the judge as is the first, and if exercised would lead to infinitely worse consequences. The right of trial by jury is to remain inviolate, and this right extends not only to the mode and manner of declaring who shall compose the juries, but also as to the mode and manner in which they shall be selected to try each particular case. It would be a most dangerous power with which to clothe a judge, to say that he, upon the failure of a panel, might indicate even in the remotest manner who should be called to complete it.

In this case the judge finding himself in want of eight jurors, directed the clerk to call the first names upon the list of traverse jurors. In a legal sense who were they at that time and in that connection? They were nothing but talesmen selected by the judge to try this case, and not taken either from the same class of persons, whom he in his discretion had determined should sit in this case—they lacked one of the essential elements necessary to qualify them equally with their new fellow-jurors. If he could have had the first twelve called, he could have had the last called, or any part thereof, and put them upon the parties. It is no reply to say that the exercise of an unlawful power saves time or lessens expense; time, expense and convenience must yield to law.

3. Complaints were made to the charge of the judge upon the manner in which he presented the law governing the attestation of the paper offered as the will of the deceased, and as there is to be a new trial, and the same questions passed upon, we rule upon the subject as it appears in this record. There is no unvarying and universal rule which can be laid down; each case must be determined by its own circumstances. That the will shall be signed in the presence of the testator, was to prevent a fraud's being perpetrated upon him by substituting another for the true will. Therefore the attestation must be made at a time and

place where the testator can see that he is not imposed upon, and have cognizance of the persons and the act. The *general* rule is—"if the situation and circumstances of the testator and witnesses are such as that the testator, in his actual position, might have seen the act of attestation, it is a good attestation;" 6th *Ga.*, 539, and authorities there cited.

The attestation must be in the presence of the testator—that is where he may see it—there must be no obstruction to prevent his seeing it, his *position* must be such as to enable him without change of *situation*—not *position*—to see the witnesses subscribing the will by looking in that direction, and bringing within the scope of his vision the *factum* of the attestation.

Judgment reversed.