IN THE MATTER OF EDWARD TOBIN, Deceased.

*Opinion filed April 16, 1902—Rehearing denied June 5, 1902.*

1. WILLS—*when attestation is in testator's presence.* If the testator is propped up in bed so that he can plainly see a table some ten feet away, in the same room, and can see enough of the act of signing to know that the witnesses and the will are in his presence and that the former are signing their names as witnesses to his will in accordance with his request, it is sufficient, even though the bodies of the witnesses, when the signing is done, are between the testator and the table, so that he cannot see the pen nor the letters traced by it, nor, probably, the hand that held the pen.

2. SAME—*beneficiaries in a will are not competent to testify in its favor against heirs-at-law.* Parties who are beneficiaries under a will and trustees to carry out its provisions cannot testify in favor of the will, where the heirs-at-law are resisting probate thereof.

3. SAME—*proponent not limited to subscribing witnesses in circuit court.* On appeal to the circuit court from an order of the county court denying probate, the proponent is not concluded by the testimony of a subscribing witness that the testator did not have testamentary capacity, but may prove that fact by other witnesses.

4. TRIAL—*when propositions are properly refused.* Propositions presented to be held as the law of the case are properly refused where they are not in the nature of propositions of law, but merely statements and special findings of fact.

CARTWRIGHT, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. E. P. VAIL, Judge, presiding.

KERR & KERR, for appellant.

BASTRUP & O'NEILL, M. H. GUERIN, W. C. H. KEOUGH, and COLLINS & FLETCHER, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

An instrument purporting to be the last will of Edward Tobin, deceased, was offered for probate in the probate court of Cook county and probate was refused. Thomas J. Raycroft, trustee and executor of said will, then appealed to the circuit court, where a trial was had before the court without a jury and probate was again refused, and he has now appealed to this court.

The alleged will was signed by Edward Tobin February 2, 1900, in a room in the Mercy Hospital, Chicago, and was witnessed by Katherine Sicklesteel, Achilles Davis and Joseph V. Mukautz. The contestants contend, and the circuit court seems to have been of the opinion, that the will was not attested in the presence of the testator. Tobin was sick in bed at the time of the execution of the will. The room in which he was lying was about fifteen feet square, and contained, besides his bed, a couch, a dresser, several chairs, a small medicine table, and another table which the witnesses used while signing their names. The bed was against the south wall of the room, —a little east of the middle,—with its head-board against the wall. The table used for signing stood towards the north-west corner of the room. There is a difference of opinion among the witnesses as to its exact location when they used it to write on, one witness placing it a few feet nearer the bed than the others, but at the farthest it could not have been more than ten feet away from the testator when the witnesses signed their names. There were present in the room the three attesting witnesses and Thomas J. Raycroft and Hannah Sullivan, the two latter being, respectively, a nephew and niece of the testator and were named as trustees in the will. The witness Mukautz brought the draft of the will with him when he entered the room, and Raycroft aroused the testator, who was sleeping. Mukautz read the will over to him, and at his request re-read some parts of it, and asked him if he was willing that his nurse, the doctor and Mukautz should witness it, and he said yes. Tobin was propped up with pillows. There were four or five pillows back of him, and he was sitting in the middle of the bed, substantially in an upright position. The will was put on a book or board to write on, and Tobin signed his name to it. All the witnesses saw him sign it. After he had signed he sank back on the pillows, but the pillows were not taken out nor Tobin laid back, but he re-

mained in an upright position until after the witnesses
had signed and attested the will. After the testator had
signed the will Mukautz took it and laid it on the table,
upon which the witnesses signed it. Mukautz testified
that he drew the table out of the corner for convenience
in signing, while the other two subscribing witnesses tes-
tified that the table was not moved. The three witnesses
signed in the order named. First the nurse, Katherine
Sicklesteel, wrote her name, standing in front of the
table, with her back to Tobin, while Dr. Davis stood to
one side. Then they exchanged places, and Dr. Davis
signed, with his back to the testator, and then Mukautz
signed in the same position. The contention of appellees
is, that as the bodies of the witnesses intercepted the
testator's view of the table and the will, the act of attes-
tation was not done in his presence, as required by the
statute. Dr. Davis and Miss Sicklesteel, two of the three
subscribing witnesses, testified that Tobin could not see
the witnesses sign; that he could only see the body of
the person who was writing. Dr. Davis also said that
his back did not hide the whole table, but that the tes-
tator could see part of it,—how much he did not know.
The table was two feet and eight inches long, one foot
and ten inches wide and two feet and five inches high,
and the witnesses were at the side of the table when they
signed. This fact, and a reference to the plat introduced
in evidence, clearly show that a person sitting up in the
middle of the bed could see the table in either of the
positions the witnesses located it.

Great stress is laid by the contestants on *Drury* v.
*Connell*, 177 Ill. 43, where it was said (p. 47): "The pur-
pose of the statute is not attained by mere ability to see
the witnesses or some part of them, but the act of attes-
tation is the thing which must be in the presence of the
testator. In the case of *Witt* v. *Gardiner*, 158 Ill. 176, the
rule as to what constitutes the 'presence' of the testator,
within the meaning of the statute, was considered and

settled. The rule as so determined is, that 'contiguity, with an uninterrupted view between testator and subscribing witnesses, is the indispensable element of the physical signing in the testator's presence.' It is immaterial that he does not see if he might have done so; but no mere contiguity of the witnesses will be sufficient if the testator cannot see them sign. Nothing will constitute a 'presence,' within the meaning of the statute, unless the testator can, from his actual position, see the act of attestation. * * * The act of attestation must be performed within the range of the testator's vision, and in such a way that he could know that it was his will which was being attested and could see the act of signing."

In the case at bar we think there is no doubt that the testator could have seen the table and the witnesses if he chose to look, but he could not see the pen in the hand of any witness tracing the letters of the witness' name. He could see the witness Mukautz take the will and lay it down on the table, and see each of the witnesses step up to the table and bend down over it while signing. Whether he could see any part of the will while they were in the act of signing does not appear, but he saw or could have seen Mukautz place the will on the table and that there was no other paper there, and could have seen the will itself on the table when his view was not obstructed by the body of the witness while subscribing his name. He had just heard the will read and had asked the witnesses to sign it. The table was directly, or nearly so, in front of him,—less than ten feet away,— and he could see the witnesses over the foot-board of the bed while they were in the act of signing their names, although he could not see the pen or the letters traced by it, and probably not the hand that held the pen. The cases cited above lay down the rule by which the courts of this State should be guided, with sufficient certainty. We have never held that it is necessary to a valid attestation that the testator must be able to see the pen and

the letters composing the witness' name as the former is held and the latter are traced by the subscribing witness. If he can see the act of attestation,—that is, can see enough of the act of signing to know that the witnesses and the will are in his presence and that the former are at the time signing their names as witnesses to his will in accordance with his request,—that will be sufficient. It is necessary only that the attestation be done in his presence and that he be able to see the act. We are of the opinion that the evidence sufficiently established the fact that the will was attested by the subscribing witnesses in the presence of the testator and at his request.

Counsel for appellant complain of the decision of the court in refusing to hold as law in the decision of the case certain propositions presented on behalf of the appellant. These propositions were mere statements of facts, and were not in the nature of propositions of law at all. The court is not required to make a special finding and statement of the facts in the case, and these supposed propositions of law were properly refused.

The appellant has also assigned as error the refusal of the circuit court to allow Thomas J. Raycroft and Hannah Sullivan, both of whom were present when the will was executed and attested, to testify to the facts of such execution and attestation. They were parties to the proceeding for the probate of the will and were beneficiaries under it, and were also trustees to carry into effect its provisions. The opposite parties were heirs-at-law of the deceased and were contesting the probate of the will. It was therefore not error to exclude the testimony of these witnesses.

Two of the three witnesses who had subscribed their names as witnesses to the will, certifying that it was executed in their presence by the testator and that he had requested them to sign as such witnesses and that they had done so in his presence, gave, as we have seen, all the testimony there was which tended to prove that he

could not see them sign as such witnesses and therefore that it was not signed in his presence, and refused to testify they believed him to be of sound mind and memory when he executed the will. Dr. Davis testified that he did not know what the testator's mental condition was, and Katherine Sicklesteel testified that she did not believe that he had sufficient mental capacity to understand and transact ordinary business affairs. But the trial was had in the circuit court on appeal from an order of the county court refusing probate of the will, and the proponents were not confined to the testimony of the subscribing witnesses, but had the right to support the will by any evidence competent to establish a will in chancery, under section 13 of the act in regard to wills, and the fact was sufficiently established by the testimony of other witnesses having equal opportunities to know his mental condition, that he was at the time of sound mind and memory, although greatly weakened physically by sickness.

While we do not find that the trial court erred in its holding upon propositions submitted to be held as law in the decision of the case, still we are of the opinion that the preponderance of the evidence in the case was in favor of the proponents of the will upon the two principal questions presented to the court for its decision on the application for probate,—that is to say, that the will was properly attested by the subscribing witnesses in the presence of the testator and at his request, and that he was of sound mind and memory,—which, in the absence of any evidence of fraud, compulsion or other improper conduct, was sufficient to admit the will to probate.

The judgment of the circuit court refusing probate will be reversed and the cause remanded to that court, with directions to enter a judgment admitting said will to probate as the last will of Edward Tobin, deceased.

*Reversed and remanded, with directions.*

Mr. JUSTICE CARTWRIGHT, dissenting.