## MOORE, administrator, *v.* WALTON *et al.*

1. One ground of the motion for new trial assigns error on the ground that
   the court permitted a witness to answer the following question: "Will
   you tell the court and jury whether you remember any fact or circum-
   stance, attending the signing of this paper by you and by Mrs. Savell and
   by Mr. Duggan?" The witness answered, "No, I have no recollection of
   the circumstances connected with it." The objection made at the time
   was: "It is leading, and it is not a relevant question in the case.    It
   is not what his recollection is about the circumstances, but whether or
   not she acknowledged her signature before him as a witness to her
   will, and what his recollection about it is." This ground of the motion
   does not show error.
2. Movant contends that the court erred in overruling the objection of the
   caveator to the evidence of one of the witnesses of the defendant, in
   reply to the following question: "And take the year 1920, how many
   papers would you say you witnessed during that year?"    The answer
   was, "I have no idea." The objection made by the caveator to this
   testimony was "that it was irrelevant to the case, and prejudicial to the
   caveator." In the same ground of the motion movant complains of the
   following evidence:  "Question: Mrs. Savell, can you recollect any
   specific paper that you witnessed during the early part of 1920? Answer:
   No; I have no recollection of any specific paper.    Question: Can you
   recollect any person, man or woman, who came there during the early
   part of 1920, and asked you would you sign a paper, what papers you
   signed? Answer: Mr. Owen came most frequent. He was vice-president."
   This ground of the motion fails to show error.
3. Movant complains that the court erred in overruling the objection of
   caveator to the evidence of a witness for the propounder as follows: "I
   will ask you if there are any other ones, blood-kin of Mrs. Dempie J.
   Hill, nearest of blood-kin I mean, to Mrs. Dempie J. Hill, than those two
   nieces and nephews named in her will.    Answer: No kin.    Question
   (continuing) That she left anything to, outside of her daughter.
   Answer: No." The objection was that the relationship of the parties
   named as beneficiaries under the will was irrelevant.    The court ruled
   the testimony admissible; whereupon other testimony of similar char-
   acter was admitted and the same was made a part of the same ground of

the motion, to which no objection was offered. The sole issue in the case before us being as to the proper attestation of the will, this ground is expressly abandoned.

4. Movant complains that the court erred in allowing in evidence a letter addressed "Dear Mr. Moore," and signed "Bunn." The objection to this evidence was that it was too remote to have any relation to the condition of the mind of the testatrix at the time of making the will. The contents of the letter are not set out, literally or in substance, in the motion, and therefore this ground is incomplete. Moreover, all grounds of caveat, save that as to attestation, are expressly abandoned.

5. Movant contends that the court erred in charging the jury as follows: "The law provides that a will shall be attested and subscribed in the presence of the testator, or testatrix, by three or more competent witnesses. I have stated that to you in the general premises. The word 'attest,' as I have stated before, is the signing of the name of the witnesses. That is, to subscribe, to write, subscribo, I believe is the Latin word. It means written under, and it means this attestation is the signing of a witness at the time the will was signed, the immediate act, at the immediate time of the proposed execution of the will." The criticism of the charge is that the word "attest" is not the signing of the witness, the law providing for "subscription and attestation;" that "the two words differ in meaning, subscription meaning the mere manual or mechanical act of signing, and attestation the actual mental bearing witness to." Under the ruling in *Slade* v. *Slade*, 155 *Ga.* 851 (118 S. E. 645), this charge is not error.

6. Movant contends that the court erred in instructing the jury as follows: "In this case it is contended that this paper was signed by Mrs. Hill, and that it was attested by three witnesses. The single question is whether it was subscribed to and witnessed and attested in her presence." The criticism is that this excerpt "was calculated to mislead the jury into the belief that the sole issue in the case was whether or not Mrs. Hill was present; whereas the contention was made in the case that there was either no signature in the presence of the three witnesses or no acknowledgment to one or more of them, and that even if they signed it was not in the presence of the testatrix, in the meaning of the law." This excerpt from the charge was not erroneous. It constitutes only a disconnected part of the instructions, which, considered in the entirety, were sufficiently full and fair on that question.

7. Movant contends that the court erred in charging the jury as follows: "If Mrs. Hill signed the paper in their presence, or if she acknowledged the signature in their presence, or if the signature was acknowledged by another in her presence, and if at her instance and direction and in her presence they were requested to sign and they therefore signed as witnesses, then in either event there was due attestation, and you could find in favor of the will." The criticism of the above excerpt is to the effect that the court instructed the jury that if the signature of the testatrix was acknowledged by another in her presence or at her instance and direction in her presence, the witnesses were requested to sign, and did sign the will as witnesses, this would make the will legal; whereas movant contended that an acknowledgment, to be effectual, must be made by the testatrix herself, and that the excerpt quoted eliminates

from the consideration of the jury the subscription being in the presence of the testatrix. In view of the further instruction in immediate connection with the above, and the undisputed fact that the testatrix signed the will, and of the full and complete statements in the attestation clause signed by the witnesses, also undisputed, if the excerpt in question is subject to the criticism, it was not harmful to the caveators.

8. Movant contends that the court erred in charging the jury as follows: "That is to say, if she was there and she or some other person in her presence acknowledged that this was her will and her signature, and if after that they signed as witnesses, that would be a compliance with the law in respect to attestation." The criticism is substantially the same as that made to the excerpt in the next preceding headnote; and it is held that the charge was not erroneous, for the same reasons as there stated.

9. Movant complains that the court erred in charging the jury as follows: "If she signed this will knowing its contents, and if she made acknowledgment showing that she put her name bona fide upon the paper that she desired witnessed, though not signing in the presence of the witnesses, who signed in the presence of each other, and the witnesses affixed their signatures to the attestation clause, the will would be properly executed, and you should find in favor of the will." The criticism of this excerpt is that it eliminates "consideration of the witnesses signing in the presence of the testatrix, and further eliminates the consideration of and acknowledgment to more than one witness, or even to any of the witnesses, or a signature in their presence, and the fact that the signatures must be in the presence of the testatrix." In view of the undisputed facts above stated, this ground of the motion does not show cause for the grant of a new trial.

10. The several grounds of the motion for a new trial based upon the refusal of the court to instruct the jury in accordance with written requests duly made, in view of the undisputed facts of the case, do not require the grant of a new trial. In so far as these requests were pertinent they were covered in the general charge. In some respects they were not adjusted to the facts. In other respects the requests do not take into account the undisputed facts.

11. The verdict for the propounder was authorized by the evidence.

No. 4196.   JUNE 11, 1924.

Appeal.   Before Judge Ellis.   Fulton superior court.   January 4, 1924.

*J. M. Moore* and *McDaniel & Neely,* for plaintiff in error.

*Clement E. Sutton* and *Anderson, Rountree & Crenshaw,* contra.

GILBERT, J.   This was a proceeding to probate a will, to which a caveat was filed.   Originally the caveat contained several grounds. After the verdict sustaining the will, a motion for a new trial was filed, and the exception is to the judgment refusing a new trial. The brief of counsel for the plaintiff in error states: "Although there remains in the record certain evidence which was relevant

upon the amendment to the caveat attacking the will upon the ground of mental incapacity and undue influence, these grounds of the caveat are expressly abandoned, it being admitted on behalf of the plaintiff in error that the evidence, even if insufficient to sustain the amended caveat on these grounds, would yet be sufficient to justify a jury to find against the caveat on these particular grounds; and therefore it will only be necessary to consider the case from the standpoint of the caveat based upon the ground of insufficient attestation."

Headnotes one to ten, inclusive, do not require elaboration other than what is hereafter said in this opinion. "A proper attestation clause, to a duly signed and attested will, raises the presumption of a legal execution. Where there is a proper attestation clause to a will, a prima facie case of due execution is made by proving the signatures of the testator and the subscribing witnesses, or by proving the actual signing by them, and this proof may be made by persons other than the attesting witnesses." Redfearn on Wills and Administration of Estates, 114, § 73. "When the attestation clause recites all the facts essential to its due execution as a will, and it is shown that the alleged testator and those whose names appear thereon as witnesses actually affixed their signatures to the paper, a presumption arises that it was executed in the manner prescribed by law for the execution of wills; and this is so though there may be on the part of one or more of the witnesses a total failure of memory as to some or all of the circumstances attending the execution." *Underwood* v. *Thurman,* 111 *Ga.* 325 (3) (36 S. E. 788); *Shewmake* v. *Shewmake,* 144 *Ga.* 801 (87 S. E. 1046); *Wells* v. *Thompson,* 140 *Ga.* 119 (78 S. E. 823, 47 L. R. A. (N. S.) 722, Ann. Cases 1914C, 898); *Gillis* v. *Gillis,* 96 *Ga.* 1, 17 (23 S. E. 107, 30 L. R. A. 143, 51 Am. State Reports, 121); *Deupree* v. *Deupree,* 45 *Ga.* 416 (3). "The law does not allow proof of the valid execution and attestation of a will to be defeated at the time of probate by the failure of the memory on the part of any of the subscribing witnesses. . . Or, by their even denying their signatures altogether, when such denial is overcome by other competent evidence." Grice on Executors, Administrators and Guardians, 330, and authorities cited. Immediately following the name of the testator at the conclusion of the will is the following language: "Signed, declared, and published

by Mrs. Dempie J. Hill, as her last will and testament, in our presence, she first signing in our presence and we afterwards signing in her presence, in the presence of each other, and at her special instance and request signing the same as witnesses. This 16th day of Sept., 1920. Lillian L. Savell, C. A. Griffin, A. H. Duggan, N. P. State at large." This is a complete and proper attestation clause. Indeed it is impossible to conceive an attestation clause couched in more ideal language or one reciting more fully all the facts essential to the due execution of the will. It is admitted in the brief of counsel for the plaintiff in error that the witnesses "did sign [subscribe] the paper," but they insist "that they never did attest the same," arguing that the language of the code "attested and subscribed" is in the conjunctive, that signing the names or subscribing to the paper alone is not sufficient; that there must be "attestation" which carries with it "the mental knowledge on the part of the witness that he or she has either seen the testator sign or that the testator has acknowledged his signature to such witness," citing Robbins *v.* Robbins (N. J.) 26 Atl. 673. The testator need not publish the contents of the will to the witnesses; and "no special request by the testator to the witnesses to attest his will is necessary; the law implies the request in the consummation of the act of execution." Redfearn on Wills and Administration of Estates, 131, § 80.

In the case of *Slade* v. *Slade,* supra, the question of publication and attestation of wills was elaborately discussed. In this case, as in the *Slade* case, it is not insisted that the testatrix did not sign the will, or that she did not know the contents of the paper which she did sign. The undisputed evidence shows that the testatrix signed the will. The only contention of the caveators is that the will was insufficiently attested. All other grounds of the caveat as amended are expressly abandoned. In the *Slade* case it was said: "There is no significance in the use of the two terms 'attested' and 'subscribed' as used in section 3846 of the Code, which raises an inference of conflict in the meaning of the two terms, or an inference that the word 'attested' embraces the idea that there is an acknowledgment of the paper as a will upon the part of the testator." It was also held that the word "attested" does not carry with it any implication of publication. "'Attestation' is the act of witnessing the actual execution of a paper and

subscribing one's name as a witness to that fact. . . The requirement of § 3846 of the Code that 'all wills . . must be in writing, signed by the party making the same, . . and shall be attested and subscribed in the presence of the testator by three or more competent witnesses,' does not mean that the witnesses should be present, when required, to bear witness to the knowledge of the character and contents of the paper executed by the testator, but does mean and imply the presence of witnesses standing by when the testatrix signed her name or acknowledged her signature, and who, when required, can bear witness to the fact of the signature of the paper by the testatrix, and yet need not know what the paper was which was executed." As stated above, it is undenied in the present case that the testatrix did sign the will. The evidence shows, without conflict, that the testatrix knew that she was signing her will, because she had caused her attorney to draft a will for her, and the attorney had given her explicit directions as to the execution of the paper. The evidence is also without conflict that the three witnesses did sign their names to the will as it appears and was presented for probate. Their names appear after the attestation clause. Their genuine signatures thus appearing after the attestation clause, unless their signing was to be regarded as meaningless, the witnesses themselves, in the act of signing, declared that the testatrix had first signed "her last will and testament in their presence and that afterwards the witnesses signed the will in the presence of the testatrix and in the presence of each other, 'at her special instance and request.' " Under the authorities above cited, these facts, as a matter of law, were sufficient to make a prima facie case for the propounder and to shift the burden of disproving legal attestation to the caveators. The three witnesses whose names appear under the attestation clause are Mrs. Lillian L. Savell, A. H. Duggan, and C. A. Griffin. Each of them identified as genuine their own signatures and the signatures of the other two witnesses.

In addition to this, there was other testimony of these witnesses upon which plaintiff in error bases the contention that the verdict on behalf of the propounder was not only unsupported by evidence, but that a verdict for the caveators was demanded. Plaintiff in error concedes that the evidence of the attesting witnesses is undisputed. After identifying his signature, C. A. Griffin testified

as follows: "I have no recollection of seeing Mrs. Savell sign this particular paper. I just know her signature. I have no recollection of seeing Mr. Duggan sign. I do not know what lady it was requested Mrs. Savell to sign her name. I don't know who requested it, or who did not request it. I don't know who requested Mr. Duggan to sign, or did not request his signature. There is no fact connected with this paper that I signed, or the signing of this paper, that I now recall, only the fact that I recognize my own signature. I do not remember Mrs. Dempie J. Hill during her lifetime. I have never seen Mrs. Hill or never known anything connected with her. As to whether Mrs. Hill was there at the desk at the time I signed that paper, and as to whether she wrote, or who wrote this name, whether the lady who wrote this name was there or not at the time I signed the paper, I cannot state whether she was there or not. I can state she did not ask me to witness the paper herself. As to how, if I do not remember anything about it, I can say she did not ask me to sign the paper herself—if she had stated to me, 'This is my last will and testament' and asked me to sign it, I would have remembered it, but no statement like that was made to me. As to whether I mean she did not say, 'This is my will,'—she did not say anything to me. I do not know that she was in the bank." Mrs. Lillian L. Savell, in addition to identifying her signature as genuine, also testified: "I have no recollection as to the facts and circumstances connected with my signing this paper. Outside of my usual custom about signing papers in the bank, I do not recall where I was when I signed it, or who was present when I signed it. . . I do not know who presented the paper to me. All I can say is that I signed it at Mr. Duggan's request. Outside of Mr. Duggan's request, I cannot recollect how I came to sign it. . . So far as I know, Mr. Duggan handed me this paper and asked me to witness it. That would be my best recollection from the custom. . . You, Mr. Neely, and Mr. Moore called on me almost immediately after Mrs. Hill's death, at the bank. I think it was sometime in the early part of November when you came to see me. I told you and Mr. Moore at that time that I had never seen Mrs. Hill, and that she never acknowledged her signature. I now swear that I never saw her, and that she never acknowledged her signature to me. I have witnessed a lot of papers before and

since this will is supposed to have been witnessed. I witnessed a will before this will is supposed to have been witnessed. I have a recollection about that now. I remember the circumstances of that will that was signed before this paper was signed. It was brought to my attention by the testatrix that it was her will, and that she wanted me to sign it as such. It does seem that I would have remembered it if Mrs. Hill had asked me to witness her will."

A. H. Duggan testified that he wrote the figures "16" in the date line to the will, the 16th of September. He also testified as follows: "I recollect a lady in black coming to the window with some gentleman and asking that this paper be witnessed. She said that she wanted three witnesses, and the given name was a very unusual name, was the only thing I could recollect specifically. When she said she wanted it witnessed, the best I recollect it was signed at the window, on the marble slab there at the window. The best I can recollect she was at the window when she signed. As to whether the paper was there at the window—on the slab, the marble slab, she could have witnessed it at the desk about five feet away and come back there and acknowledged it, but the best I recollect she was right at the window. I can recollect that her signature was one she made there that day, the signature on that paper, on the day that I wrote the '16.' I signed the paper as an attesting witness at her request. Outside of what I have testified, I don't recollect anything that was said or done by anybody at the time Mrs. Savell signed the paper. At the time Mrs. Savell signed the paper, Mrs. Hill, the lady in black, was at the window. Mr. Griffin signed the paper ahead of me. He signed first. I saw him sign it at my request. He did it at my request. When I made the request Mrs. Hill was at the window. As to where the lady in black, Mr. Griffin and I were when Mrs. Savell signed—Mr. Griffin and Mrs. Savell were there; we were in the cage. I would say we were at the marble slab in the cage at the time those signatures were made by these attesting witnesses." The witness Duggan was shown an affidavit dated November 12th, 1920 (the will was dated September 16th, 1920), and admitted that it was his affidavit. In this affidavit is the following language: "Deponent says that he has no recollection of having seen Mrs. Dempie J. Hill. Deponent says that he has no recollection

of the paper being presented to him as a will, or of any one asking that he witness the paper as a will; that it might have been signed before the paper was presented to him, and some one might have, and probably did, ask him to witness the paper after her signature had already been affixed." He further testified: "Some forty-five days after that, after the death of Mrs. Hill, I was approached and asked whether I recollected attesting this will. At that time I did not recall any fact or circumstances connected with the execution of the will. Mr. Neely came down to see me himself about it. He called me up over the 'phone. At that time I did not recollect anything about it." He further testified: "Mr. Griffin signed the paper ahead of me. He signed first. I saw him sign at my request. He did it at my request. . . I do not recollect whether I saw her sign it right there at the marble slab or at the desk. I will swear that definitely, that I do not recollect. I do not recollect whether I asked Mrs. Savell to sign it, or whether Griffin asked her to sign it."

It is argued by the plaintiff in error that the evidence, the essential portions of which are quoted or mentioned above, demanded a finding that two of the witnesses, C. A. Griffin and Mrs. Savell, never at any time saw Mrs. Hill, and that she did not sign in the presence of these two witnesses or acknowledge her signature to them; and that, considering the contradiction between the oral evidence of the witness Duggan and his affidavit, his testimony is insufficient, considered either by itself or in connection with all of the other evidence, to support the finding of the jury in favor of the propounders. It is contended that the testimony of Mrs. Savell, to wit, "I now swear that I never saw her, and that she never acknowledged her signature to me," and the testimony of C. A. Griffin, another attesting witness, to wit, "I never saw Mrs. Hill at any time," is sufficient to prevent the probating of the will. This contention, however, apparently overlooks other evidence of these witnesses. Mrs. Savell also swore: "I have no recollection as to the facts and circumstances connected with my signing this paper. . . I do not recall where I was when I signed it, or who was present when I signed it. . . I do not know who presented the paper to me. All I can say is that I signed it at Mr. Duggan's request." Mr. Griffin also testified: "There is no fact connected with this paper that I signed, or the

signing of this paper, that I now recall, only the fact that I recognize my own signature." It is further contended that under the evidence of the attesting witness some one else may have signed the will, and not Mrs. Hill. But this is to entirely overlook the conceded fact established by undisputed evidence that the genuine signature of Mrs. Hill, the testatrix, is signed to the will, and there is no pretense that her name was affixed to the will by any other person. In fine, all of the signatures, that of the testatrix and all three of the attesting witnesses, are conceded to be genuine; and under such circumstances it is impossible for this court to say that the verdict for the propounder was unauthorized.

*Judgment affirmed. All the Justices concur, except Atkinson and Hill, JJ., disqualified.*