## 29685. GLENN v. MANN.

NICHOLS, Chief Justice.

This is an appeal from an order of the Superior Court of Fulton County adopting the judgment of the Fulton County Court of Ordinary which declared a propounded will valid and admitted it to probate in solemn form. The appeal calls into question the validity of the will's execution.

The propounder, William H. Mann, offered for probate in solemn form the alleged will of Daniel P. Bennett, Jr. The will was handwritten by the testator; it stated that it was his last will and testament and was dated August 7, 1972. It contained no attestation clause. Below his signature appeared the word "Witness" followed by the signatures of James P. Goodman and Charlene Kovacs. The testator's sister and sole heir at law, Barbara Bennett Glenn, filed a caveat alleging invalid execution, undue influence, fraud, misrepresentation, monomania and mistake of fact. After a hearing the court of ordinary overruled the caveat and ordered the will admitted to probate in solemn form. The caveatrix then appealed to the Superior Court of Fulton County. Both parties moved for summary judgment. On the basis of the affidavits, depositions, interrogatories, and the transcript of the hearing in the court of ordinary, the superior court granted summary judgment for the propounder and adopted the judgment of the court of ordinary admitting the will to probate in solemn form. The caveatrix appeals. For reasons appearing below, the judgment will be affirmed.

The caveatrix' principal contentions on appeal concern the validity of the will's execution. In order to fully examine the issues she raises, it is necessary to set out in some detail the testimony relating to the execution and the physical setting in which it took place. The uncontradicted evidence showed that the testator entered the branch building of the First National Bank of Atlanta on 26th Street the morning of August 7, 1972. He

approached the desk of James P. Goodman, with whom he was personally acquainted, and was given permission to use a vacant desk next to Goodman's to take care of some personal business. The desk which the testator occupied was located approximately six feet directly to the left of Goodman's and faced in the same direction. The testator made a few phone calls and did some writing. Goodman testified that 15 to 20 minutes after the testator's arrival, he "asked me if I would witness his will . . ." Goodman stood next to the desk the testator occupied and read enough of the document to satisfy himself that it was a will. He then signed the will while standing approximately a foot from the testator. Goodman testified that he did not recall whether he saw the testator sign the will, but he did remember seeing the testator's signature on the will when he, Goodman, signed.

According to Goodman's testimony, the testator then asked him to get someone else to witness the will. Goodman took the will to Charlene Kovacs who was seated at a desk ten feet directly in front of and facing in the same direction as the desk at which the testator was seated. Goodman told Kovacs that the document was the testator's will and asked her to witness it. Kovacs signed the will which had been placed at the back left-hand corner of her desk. Goodman testified that to the best of his recollection, the testator did not speak with Kovacs or communicate with her in any way. Goodman also testified that to the best of his recollection the testator remained seated at the desk to the rear of Kovacs' desk while Kovacs signed the will. Goodman did not know what the testator was doing while Kovacs signed the will. To the best of Goodman's recollection, the testator was sitting at the desk to the rear of Kovacs' desk when Goodman took the will to Kovacs and was sitting there when Goodman returned the will to him. The testator's view of the will as Kovacs signed would have been obstructed by Kovacs, by Kovacs' chair, and by a typewriter which was placed on a stand protruding back from the back left-hand corner of Kovacs' desk. Given the 3-foot width of the desk occupied by the testator, he would have been sitting approximately 13 feet from the will as Kovacs signed it. There was no wall or vertical obstruction between Kovacs and the

testator. The desks were located in an open area of the bank. Approximately two to three minutes elapsed between the time Goodman signed and the time he returned the will to the testator after Kovacs had signed.

Kovacs testified that she had formerly worked in the same office with the testator and knew who he was. She only vaguely remembered his having entered the bank that day, and other than the fact that she recognized her signature appearing on the will, she had no recollection of anything transpiring in connection with the will's execution.

1. The caveatrix contends that the testator did not acknowledge his signature to Kovacs; therefore, she did not qualify as an attesting witness in terms of Code Ann. § 113-301, as amended. That statute provides: "All wills (except nuncupative wills) disposing of realty or personalty shall be in writing, signed by the party making the same or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of the testator by two or more competent witnesses." The general rule is that "[t]o constitute a legal execution of an instrument purporting to be a will, under [Code § 113-301, as amended], it is absolutely necessary that the attesting witnesses either actually see the testator sign the instrument, or that the testator acknowledge his signature thereto either expressly or impliedly." *Wood v. Davis,* 161 Ga. 690, 693 (131 SE 885). Accord, *Thornton v. Hulme,* 218 Ga. 480 (1) (128 SE2d 744). Of course, the acknowledgment must be made in the presence of the witnesses. See *Shewmake v. Shewmake,* 144 Ga. 801 (1, 2) (87 SE 1046); *Thompson v. Davitte,* 59 Ga. 472 (8); *Webb v. Fleming,* 30 Ga. 808 (1).

The caveatrix does not question the validity of Goodman's attestation of the will. With respect to the witness Kovacs, the caveatrix contends that it was necessary that the testator himself acknowledge his signature and in this regard argues that Goodman's statement to Kovacs that the document was the testator's will and his request to her that she sign did not constitute an acknowledgment by the testator himself. In support of her contention, caveatrix refers to the decisions in *Waldrep v. Goodwin,* 230 Ga. 1 (195 SE2d 432); *Wood v.*

*Davis,* supra; *Slade v. Slade,* 155 Ga. 851 (118 SE 645); *Shewmake v. Shewmake,* supra; and, *Brown v. McBride,* 129 Ga. 92 (58 SE 702). The *Waldrep* case, however, did not involve the question under consideration here. In *Wood,* the evidence showed that the testator remained seated in a car while one of the witnesses took the will to one Peed who was located inside a building near the car. The witness identified the document to Peed as the testator's will and asked him to sign. Although the decision stated that there was evidence to show that the testator's position was such that he could have seen Peed sign, it held, without discussing the point, that the testator did not acknowledge his signature to Peed. The *Slade, Shewmake,* and *Brown* cases represent authority contrary to the caveatrix' position. In *Shewmake v. Shewmake,* supra, p. 815, this court stated that, "any acknowledgment before [the witnesses] of [the testator's] signature to the instrument is sufficient, and that the 'due acknowledgment' need not be embodied in any particular verbal formula, but it may be inferred from conduct which amounts to an acknowledgment of the signature." The court held that although the testator never showed the witnesses his signature, his statement to them that "this is my will" constituted a sufficient acknowledgment of the will, the signature included. For a similar holding see *Thompson v. Davitte,* supra, pp. 480-481. In *Brown v. McBride,* supra, the recital of facts showed that one of the witnesses was requested by a person, not a party to the transaction, to witness the testator's will. Although the court did not discuss the issue under consideration here, it upheld the admission of the will to probate. In the decision in *Slade v. Slade,* supra, (Hn. 2b), this court held: "Attestation of a will by the subscribing witnesses, signed by them in the presence of the testatrix and with her knowledge may be treated as the equivalent of a request by her that those persons subscribe their names as witnesses to the paper, and especially when such testatrix is shown to have been seeking witnesses for the purpose of having them attest her will." For a similar holding see *Huff v. Huff,* 41 Ga. 696 (2). In the present case, the evidence showed that when Goodman stated to Kovacs that the document was the testator's will and requested

her to sign, both Goodman and Kovacs were positioned some 10 to 13 feet in front of the testator, within his clear view, and where he could have heard Goodman's statement and request. The testator's acquiescence in the statement and request, made in his presence, amounted to an acknowledgment of the will by testator himself.

The caveatrix contends, however, that even if the testator did acquiesce in Goodman's actions and thereby adopted them as his own, it was necessary to a proper acknowledgment that Kovacs know of the testator's presence and that she be aware of some act on his part from which she could infer his assent. Assuming, without deciding, that the caveatrix' contention is correct, there is no evidence in the present record to show that Kovacs was unaware of the testator's presence or that she was unaware of his acquiescence in Goodman's statement and request to her. Her testimony, viewed in the light most favorable to the caveatrix, reveals simply that she had no recollection of anything transpiring in connection with the will's execution. Such testimony does not represent evidence which would negative the requisite elements of a proper acknowledgment. See *Moore v. Walton,* 158 Ga. 408, 416 (123 SE 812). Where a witness fails to remember events surrounding the will's execution, there is a presumption, given proof of the signatures appearing ' on the will, that all was done as the law requires, and this is true even though there is no attestation clause. See *Deupree v. Deupree,* 45 Ga. 415, 441.

It should be noted that this holding is not affected by the decision in *Argo v. Geise,* 224 Ga. 695 (164 SE2d 134). In that case the witnesses did not see the testatrix sign, nor did they see her signature on the will when they signed. The testatrix told the witnesses only that she wanted them to witness her will. The decision stated that the testatrix did not acknowledge her *signature,* and for that reason the attestation was insufficient. That decision was the subject of the dissent of this writer for the reason that it is not the testator's signature, but the will itself, the instrument to which the testator desires legal effect be given, which must be acknowledged. This reasoning is based on the fact that Code § 113-301, as amended, is patterned after the English Statute of Frauds, 29 Car. 2, c.

3, and is subject to the construction given the Statute of Frauds by the English courts prior to 1776 under the adopting Act of 1784 (Cobb's Digest, p. 721). See *Shewmake v. Shewmake,* 144 Ga. 801, supra, pp. 817-821. See also the special concurrence of Justice Undercofler (now Presiding Justice) in *Waldrep v. Goodwin,* 230 Ga. 1, supra, p. 5. In *Argo* there was no evidence that the testatrix signature was in fact on the will when the witnesses signed. Even assuming that it is the testator's signature, and not the will, which must be acknowledged, this court made clear in the *Shewmake* case that where the evidence shows that the testator's signature was in fact on the will when the witnesses signed, an acknowledgment of the will constitutes an acknowledgment of the signature, even though the witnesses never saw the testator's signature. In the present case, Goodman's testimony established that the testator's signature was on the will when he and Kovacs signed. Accordingly, Goodman's statement to Kovacs, in the testator's presence, that the document was the testator's will, even though no reference to testator's signature was made, constituted a sufficient acknowledgment.

2. The caveatrix also contends that the witness Kovacs did not sign the will "in the presence of the testator" as required by Code § 113-301, as amended.

"As a general rule, if the situation and circumstances of the testator and the attesting witnesses to a will at the time of its attestation are such that the testator, in his actual position, might have seen the act of attestation, the requirement of the law that the witnesses shall sign in his presence is sufficiently met. *Robinson v. King,* 6 Ga. 539." *Gordon v. Gilmer,* 141 Ga. 347 (8) (80 SE 1007). The court in the *Gordon* case went on to hold that "[if at the time a testator made his will, by reason of an obstruction to the view, he could not have seen the attesting witnesses sign, by looking in that direction, and by reason of his enfeebled condition or suffering he could not have placed himself in a position to see them sign and did not see them, the attestation was not good. *Brooks v. Duffell,* 23 Ga. 441; *Reed v. Roberts,* 26 Ga. 294 (71 AD 210)."

The *Robinson, Brooks* and *Reed* cases all involved

testators who were confined to bed and were physically unable to move when the witnesses signed. In *Robinson* the will was subscribed by the witnesses out of the testator's view in a piazza adjoining the room where the testator lay. In *Brooks* the testator's view of the witnesses' subscription was obstructed by a shutter-door, and in *Reed* the witnesses signed behind a counterpane stretched across the head of the testator's bed. The court stated in *Reed* that "[t]he will and the witnesses must both be in the presence of the testator. He ought to be able, without an effort or change of position, to see both... But it should appear, in the words of one of the cases, 'that *he* was so *present* to *them,* and *they* to *him,* as that he *might* and probably *did* see the attestation.'" *Reed v. Roberts,* supra, p. 300. In the decision in *Hamlin v. Fletcher,* 64 Ga. 549, 554 (3), this court expounded on the rule as follows: "The attestation must be in the presence of the testator—that is where he may see it—there must be no obstruction to prevent his seeing it, his *position* must be such as to enable him without change of *situation*—not *position*—to see the witnesses subscribing the will by looking in that direction, and bringing within the scope of his vision the *factum* of the attestation."

There appear to be no Georgia cases detailing specifically what the testator must be able to see. Although there is some language in *Robinson v. King,* 6 Ga. 539, supra, and in *Reed v. Roberts,* 26 Ga. 294, supra, to the effect that the testator must be able to see the will itself during the act of attestation, the facts of those cases indicate that the testators were not in positions to see anything in connection with the attestations, including the witnesses as they signed. But no Georgia case has been found which goes so far as to hold that the testator be in a position to see the witness' pen actually put to the paper. Other jurisdictions appear to be split on the issue of whether the testator must be able to see the will itself as the witness signs. See 2 Page on Wills, § 19.125, p. 240. Compare In re Tobin, 196 Ill. 484 (63 NE 1021) *with* Graham v. Graham, 32 N.C. 219. A case which is strikingly similar on its facts to the present case is Bronson v. Martin, 384 Ill. 129 (51 NE2d 149), and an examination of that case is helpful in considering the issues present-

ed here.

The evidence in the Bronson case showed the following: The testator and the witnesses, Erma Loechelt and Agnes Hebeisen, were seated at desks in the same room amid a considerable amount of machinery which made some noise, perhaps "loud noise." Loechelt's desk was located directly to the left of the testator's. Hebeisen's desk was located in front of and to the left of Loechelt's desk. The distance from Hebeisen to the testator was about eight feet. The testator wrote his will in longhand. With Loechelt watching, he signed his will while seated at his desk. Loechelt then signed at the testator's desk. At the testator's direction, Loechelt took the will to Hebeisen, told her it was the testator's will and asked her to sign it. Loechelt testified that when Hebeisen signed, the testator was looking in Hebeisen's direction. As Hebeisen signed, she would have been facing in a northerly direction; the testator seated at his desk would have been facing in a northeasterly direction. After Hebeisen signed, Loechelt returned the will to the testator.

The controlling Illinois statute, which like Georgia's is patterned on the English Statute of Frauds, required that the will be "attested in the presence of the testator." Ill. Rev. Stat. 1941, Ch. 3, Par. 194. It differs from Georgia's Code § 113-301, as amended, only insofar as the Georgia statute requires that the will be "attested and subscribed in the presence of the testator." The omission of the words, "and subscribed," from the Illinois statute does not render its operation materially different from the Georgia statute. It has been held that the "terms 'attested' and 'subscribed' are kindred in their nature, but subscribed is embraced in the term attested." *Slade v. Slade,* 155 Ga. 851, supra (Hn. 3a).

The Supreme Court of Illinois in the Bronson case reversed the order of the lower court which had denied the will to probate. The Supreme Court held that under the evidence the testator acknowledged the will to the witness Hebeisen. It further held that because the testator was looking in Hebeisen's direction when she signed, "he was in a position to have seen her writing her name on the instrument and this is all that the law requires." The

court so held despite the point that Hebeisen's back was to the testator when she signed.

Contrary to the caveatrix' arguments, the facts of the Bronson case cannot be meaningfully distinguished from those of the case at bar and that case is persuasive in support of the propounder's position that the witness Kovacs signed in the testator's presence. As this court was careful to note in *Hamlin v. Fletcher,* 64 Ga. 549, supra, p. 553, "[t]here is no unvarying and universal rule which can be laid down; each case must be determined by its own circumstances. That the will shall be signed in the presence of the testator, was to prevent a fraud's being perpetrated upon him by substituting another for the true will." Under the circumstances of this case, the caveatrix' contention that Kovacs did not sign in the testator's presence cannot be sustained.

3. The caveatrix contends that even though she would have the burden at trial of proving her allegations of fraud, misrepresentation, monomania, mistake of fact and undue influence, the propounder's motion for summary judgment cannot be sustained unless he shows by evidence that there exist no facts to support her allegations.

With respect to the allegations of fraud, monomania and misrepresentation, the caveatrix testified in her deposition that she knew of no facts or witnesses in support thereof. In the decision in *Taylor v. Donaldson,* 227 Ga. 496 (181 SE2d 340), which involved a caveat based on undue influence and revocation by subsequent will, this court upheld summary judgment in favor of the propounder under similar circumstances. The decision stated at pp. 500-501 that from the answers and admissions, "it was apparent that the caveator and his attorney knew of no witnesses or information pertinent to the issues on appeal. Therefore, they were not in position to produce, upon a jury trial in the superior court, any evidence to substantiate the grounds of the caveat. The propounder's motion thus effectively pierced the caveator's pleading and revealed that the caveat had no merit whatsoever. In view of this situation, the caveat had no legal significance in the appeal and was subject to being eliminated therefrom. Without the caveat there

was no issue upon appeal. Hence there was no necessity for the propounder to present any evidence upon a jury trial to establish the validity of the will, by the subscribing witnesses or otherwise."

4. As to the allegation of undue influence, the caveatrix testified that she knew of no witnesses or facts in support thereof other than the closeness of the relationship between the testator and the propounder who was the sole beneficiary under the will. This court, in *Hill v. Deal,* 185 Ga. 42, 45 (193 SE 858), said: "The most that could be claimed would be that there are circumstances in the record that show that the two sole beneficiaries had the opportunity to exercise or to attempt to exercise undue influence on [the testatrix] at about the time the instrument was signed. There is no evidence that they did exercise it, and nothing to justify the inference that they did."

5. In support of her allegation of mistake of fact, the caveatrix referred to recitals contained in the will. At one point the testator gave as a reason for excluding the caveatrix that he felt that she was "adequately provided for." In other parts of the will the testator spoke of the propounder as his "good friend." It is apparent from her testimony that it is the caveatrix' position that the testator was mistaken as to both beliefs.

An allegation of mistake of fact is presumed to be made in reference to the meaning given that term by Code § 113-210. *Bohler v. Hicks,* 120 Ga. 800 (3) (48 SE 306). That statute provides: "A will executed under a mistake of fact as to the existence or conduct of an heir at law of the testator is inoperative, insofar as such heir at law is concerned, but the testator shall be deemed to have died intestate as to him." Even if the caveatrix' allegation that the testator was mistaken in his belief that the propounder and sole beneficiary was his "good friend" could be sustained by the evidence, such mistake would not relate to the "existence or conduct of an heir at law of the testator" in terms of the statute. With respect to the allegation that the testator was mistaken in his belief that the caveatrix was "adequately provided for," it has been held that "[a]n heir at law cannot, in any event, caveat the probate of a will on the ground that at the time

of its execution the testator was misinformed or mistaken as to the amount or value of the property owned by such heir." *Jones v. Grogan,* 98 Ga. 552 (2) (25 SE 590).

*Judgment affirmed. All the Justices concur.*

ARGUED MARCH 11, 1975 — DECIDED APRIL 17, 1975 — REHEARING DENIED MAY 8, 1975.

*Hansell, Post, Brandon & Dorsey, Hugh M. Dorsey, Jr., Richard M. Kirby,* for appellant.

*Davis, Matthews & Quigley, Baxter L. Davis, William M. Matthews,* for appellee.